# Supreme Court of Florida

_____

No. SC16-1961
_____

**IN RE: AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR (BIENNIAL PETITION).**

[November 9, 2017]

PER CURIAM.

This matter is before the Court on the petition of The Florida Bar proposing amendments to the Rules Regulating the Florida Bar (Bar Rules). We have jurisdiction. See art. V, § 15, Fla. Const.

The Florida Bar (Bar) has filed its biennial petition proposing both new rules and amendments to a number of existing Bar Rules. The proposals were approved by the Board of Governors of The Florida Bar, and formal notice of the proposed amendments was published in The Florida Bar News. The notice directed interested persons to file their comments directly with the Court. The Court received two comments; the Bar filed a response to the comments.

After fully considering the Bar's petition, the comments, and the response, we adopt the majority of the Bar's proposals, with some modifications,[1] as discussed in this opinion. However, as addressed below, we decline to adopt the Bar's proposed amendments to Bar Rule 4-7.14 (Potentially Misleading Advertisements) at this time, and we refer this matter back to the Bar for further consideration. We discuss the new rules and more significant rule amendments below.

## AMENDMENTS

First, Bar Rule 1-3.2 (Membership classifications) is amended in subdivision (a) (Members in Good Standing), as proposed by the Bar, to allow members of the Bar who have voluntarily selected inactive status to be classified as "members in good standing." New subdivision (a)(2) provides that members of the Bar who have elected inactive status, paid their annual memberships fees, and who are not retired, resigned, delinquent, suspended, or inactive because of incapacity, are considered members in "good standing" for purposes of obtaining a certificate of good standing and for no other purpose.

We amend Bar Rule 1-7.5 (Retired, Inactive, Delinquent Members), as recommended by the Bar, to authorize retired or inactive Bar members to practice

---

1. We have revised the Bar's proposals in several Bar Rules to make technical or editorial changes.

law as an "emeritus lawyer" pursuant to the Emeritus Attorneys Pro Bono Participation Program in Chapter 12 of the Bar Rules. This amendment, and other amendments to the Bar Rules addressed herein, were recommended by the Florida Commission on Access to Civil Justice, and are intended to increase the pool of lawyers authorized to provide pro bono legal services to the community under the supervision of a legal aid organization.

Next, we amend Bar Rule 1-12.1 (Amendment to Rules; Authority; Notice; Procedures; Comments), as proposed by the Bar—subdivision (g) (Notice of Intent to File Petition) will now require that the Bar's notice of its intent to file a petition to amend the Bar Rules, published in The Florida Bar News and on its website, identify the rules to be amended and state in general terms the nature of the proposed amendments; the full text of the Bar's proposals will be published only on the Bar's website. Also in Bar Rule 1-12.1, we amend subdivision (h) (Action by the Supreme Court of Florida) to provide that a summary of the Court's final action on a petition to amend the Bar Rules will be reported in The Florida Bar News and on the Bar's website.

Bar Rule 3-7.16 (Limitation on Time to Bring Complaint) is renamed "Limitation on Time to Open Investigation" and is substantially amended to clarify the limitations period for opening an investigation into allegations of lawyer misconduct. Subdivision (a) is renamed "Time for Initiating Investigation of

Complaints and Re-opened Cases," and will now include three new subdivisions. Subdivision (a)(1) (Initial Complaint or Investigation) provides that a complainant must make a written "inquiry"[2] to the Bar within six years from the time the matter giving rise to the inquiry or complaint is discovered or should have been discovered. In the case of an investigation initiated by the Bar, the Bar must open the investigation within six years from the time the matter is discovered or should have been discovered. Subdivision (a)(2) (Re-opened Investigations) provides that a re-opened disciplinary investigation is not time barred if the matter is re-opened within one year after it was closed. And subdivision (a)(3) (Deferred Investigations) states that a timely disciplinary investigation that was deferred consistent with Bar policy and the Bar Rules is not time barred if the grievance committee finds probable cause and the Bar files its formal complaint within one year after notice that the civil, criminal, or other proceedings that were the basis for the deferral have concluded. The remaining subdivisions in this rule are also amended as proposed by the Bar.

Bar Rule 4-1.8 (Conflict of Interest; Prohibited and Other Transactions) is amended in subdivision (c) (Gifts to Lawyer or Lawyer's Family) to prohibit a

---

2. We amend Bar Rule 3-2.1 (Generally), as proposed by the Bar, to add a new definition for the term "Inquiry," meaning a written communication received by Bar counsel questioning the conduct of any Bar member.

lawyer from soliciting <u>any</u> gift from a client, or from preparing an instrument that gives the lawyer or a member of the lawyer's family <u>any</u> gift. This change was proposed by the Bar in response to a suggestion from the Real Property Probate and Trust Law Section. We also amend the comment to rule 4-1.8 to explain this prohibition, and other subdivisions throughout rule 4-1.8 to clarify language. However, we have revised the Bar's proposal in subdivision (h) (Limiting Liability for Malpractice), as recommended in the comment from Attorney Timothy P. Chinaris, to remove the reference to "prospective" malpractice.

We decline to adopt the Bar's proposal to amend Bar Rule 4-7.14 (Potentially Misleading Advertisements). The Bar proposes amendments to this rule in response to a decision from the United States District Court for the Northern District of Florida, which held, in relevant part, that provisions in Bar Rule 4-7.14(a) broadly prohibiting lawyers who were not board certified from making truthful statements that they "specialize in" or "have expertise in" a particular field of practice were unconstitutional. In response to this decision, the Bar recommended amending the rule in subdivision (a) (Potentially Misleading Advertisements) to add a new subdivision (a)(5), which would prohibit lawyers from using in their advertisements the terms "specialist," "expert," or other variations of those terms unless the lawyer meets one of the four criteria established in subdivisions (a)(5)(A)-(a)(5)(D). The criteria in subdivisions

(a)(5)(A), (a)(5)(B), and (a)(5)(C) are similar to those in other parts of rule 4-7.14. However, subdivision (a)(5)(D) would provide that a lawyer may identify as a "specialist" or "expert" if the lawyer's "experience and training demonstrate specialized competence in an area of practice that is reasonably comparable to that demonstrated by the standards of the Florida Certification Plan set forth in chapter 6 of these rules"; if the area of claimed specialization or expertise is or falls within an area of practice under the Florida Certification Plan, the advertisement must include a reasonably prominent disclaimer that the lawyer is not board certified in that area of practice by the Bar or another certification program. We are concerned that the Bar's proposal here does not sufficiently address the district court's decision, and that the language requiring that a lawyer's experience be "reasonably comparable" to the Florida Certification Plan will prove to be problematic because it could lead to differing and inconsistent applications. Because we believe that this important issue requires further study, we decline to adopt the Bar's proposed amendments to rule 4-7.14, and we refer this matter to The Florida Bar for additional consideration.

Next, we have made several amendments to Bar Rule 4-7.18 (Direct Contact with Prospective Clients). As proposed by the Bar, subdivision (a) (Solicitation) is amended to provide that the term "solicit" includes contact in person, by telephone, by electronic means that include real-time communication face-to-face, or by any

other communication directed to a specific recipient that does not meet the requirements of the rule. Additionally, we amend subdivision (b)(2) (Written Communication) to require that permitted written communications to prospective clients for the purpose of obtaining professional employment must be marked with the label "advertisement" on each separate enclosure, rather than each separate page. If the written communication is a self-mailing brochure or pamphlet, the "advertisement" mark must be included on the address panel of the brochure or pamphlet, on the inside of the brochure or pamphlet, and on each separate enclosure. Subdivision (b)(3) is also amended, as proposed by the Bar, to provide that the requirements contained in subdivision (b)(2) do not apply to communications made at a prospective client's request.

In Bar Rule 5-1.1 (Trust Accounts), we amend subdivisions (a)(1) (Nature of Money or Property Entrusted to Attorney; Trust Account Required; Location of Trust Account; Commingling Prohibited), (a)(2) (Nature of Money or Property Entrusted to Attorney; Compliance with Client Directives), (g)(1)(D) (Interest on Trust Accounts (IOTA) Program; Definitions; Eligible Institution), and (g)(5) (Interest on Trust Accounts (IOTA) Program; Eligible Institution Participation in IOTA) to permit lawyers to maintain trust accounts in federally insured credit unions. We amend subdivision (g)(4) (Interest on Trust Accounts (IOTA) Program; Notice to Foundation) to direct lawyers to the Bar's website for The

- 7 -

Florida Bar Foundation's current address. We also amend other subdivisions in Bar Rule 5-1.1, as proposed by the Bar. However, we have revised the Bar's proposal in paragraphs seven and eight of the comment to the rule, as recommended in the comment from Mr. Chinaris, to delete the parentheticals included with the citations to case law.

We next adopt a new Bar Rule 6-3.7 (Inactive Status), to allow board certified members of the Bar to apply for a temporary inactive status in certain circumstances. Subdivision (a) (Purpose) of the new rule provides that the inactive status is available to eligible members who apply and are qualified for such status under the provisions of the rule. Subdivision (b) (Applicability) outlines six categories of eligible members. These include board certified members appointed or elected to serve as a judicial officer; we have revised the Bar's proposal in subdivision (b)(1) to include administrative law judges in the list of "judicial officers." Other categories of members eligible for inactive status include: law professors teaching in an accredited law school or graduate law course who agree not to practice if granted inactive status; professional neutrals, including mediators, arbitrators, or voluntary trial resolution judges, who agree not to practice law if granted inactive status; active duty military personnel; members who are unable to practice law due to a "unique substantial and material hardship, medical or otherwise"; and, during the two years immediately following the effective date of

the rule, members who voluntarily relinquished their board certification before the effective date of the rule, but who would otherwise be eligible for inactive status may be granted such status. Subdivision (c) (Qualifications) outlines the qualifications for maintaining board certified inactive status. Any Bar member granted board certified inactive status must maintain an active membership in The Florida Bar, obtain the continuing legal education credit that would be required for recertification in their practice area, and comply with the applicable rules and policies for board certification. Subdivision (d) (Revocation or Relinquishment of Board Certified Inactive Status) provides that the Board of Legal Specialization and Education (BLSE) may revoke a member's board certified inactive status if the member fails to comply with the policies. On revocation, the member cannot use the phrase "board certified inactive"; the member also cannot use the phrase "board certified" unless he or she is reactivated to board certification. Alternatively, a board certified inactive member is required to notify the BLSE within ninety days if he or she no longer qualifies for board certified inactive status, or no longer wishes to retain that status. The member must immediately cease using the phrase "board certified inactive," and either apply to reactivate their board certification or relinquish the certification. Finally, subdivision (e) (Reactivation to Board Certified Status and Recertification) outlines the procedures for seeking reactivation of board certification status.

We also adopt a new Subchapter 6-31 (Standards for Board Certification in International Litigation and Arbitration), outlining standards for board certification in the field of International Litigation and Arbitration. This subchapter includes four new Bar Rules. Bar Rule 6-31.1 (Generally) provides that a member in good standing with The Florida Bar, who is eligible to practice law in Florida and meets the standards prescribed in Subchapter 6-31, may be issued a certificate identifying the lawyer as board certified in International Litigation and Arbitration. Bar Rule 6-31.2 (Definitions) provides definitions for the terms "International Litigation and Arbitration," "Practice of Law," and "International Litigation and Arbitration Certification Committee." Bar Rule 6-31.3 (Minimum Standards) outlines the minimum standards of practice, experience, and education required to earn a certification in International Litigation and Arbitration. And Bar Rule 6-31.4 (International Litigation and Arbitration Recertification) describes the requirements for seeking recertification in International Litigation and Arbitration at the conclusion of a five-year cycle.

We amend Bar Rule 10-2.1 (Generally), as proposed by the Bar, first in subdivision (b) (Paralegal or Legal Assistant) to add language authorizing a paralegal to work under the supervision of an out-of-state lawyer or foreign lawyer engaged in the authorized practice of law in Florida. We also amend subdivision

- 10 -

(e) (Bar Counsel) to include in the definition of "Bar Counsel" Unlicensed Practice of Law (UPL) counsel and UPL staff counsel.

Bar Rule 10-9.1 (Procedures for Issuance of Advisory Opinions on the Unlicensed Practice of Law) is amended, as proposed by the Bar, to address procedures for requesting and issuing proposed advisory opinions on the unlicensed practice of law. Subdivision (b) (Requests for Advisory Opinions) is reworded to provide that a petitioner may request a formal advisory opinion concerning activity that may constitute the unlicensed practice of law by submitting a question to the Bar's UPL Department. We also amend subdivision (b) to make clear that the request must be in writing, include all of the operative facts, and ask whether the activity constitutes the unlicensed practice of law. We amend subdivision (c), renamed "Limitations on Advisory Opinions," to include that no advisory opinion may be rendered as to any matter that is currently the subject of an unlicensed practice of law investigation or grievance investigation by the Bar. And we amend subdivision (g) (Service and Judicial Review of Proposed Advisory Opinions), pertaining to proceedings in this Court to review proposed advisory opinions issued by the Standing Committee on UPL. The petitioner or any other interested party may file either a brief or a memorandum in response to the proposed advisory opinion. The Standing Committee's response, and any reply, may also be in the form of either a brief or a memorandum.

- 11 -

We amend several rules within Chapter 12 of the Bar Rules,[3] as proposed by the Bar, which, together with the amendments to Bar Rule 1-7.5 discussed herein, expand the existing eligibility requirements and allow more lawyers to serve as emeritus lawyers, providing pro bono legal services to the community under the supervision of an approved legal aid organization. The Bar proposed these changes based on recommendations from the Florida Commission on Access to Civil Justice. As amended, this Chapter will now permit inactive or retired Bar members, inactive or retired lawyers who practiced in any other state or territory of the United States or the District of Columbia, former judges, current or former law professors, and authorized house counsel to serve as emeritus lawyers and perform this important service.

We also amend a number of rules within Chapter 16 of the Bar Rules (Foreign Legal Consultancy Rule), and add a new Bar Rule 16-1.7 (Annual Sworn Statement). Among other changes in this Chapter, Bar Rule 16-1.2, renamed "General Certification Regulations," is amended to change some of the requirements for certification as a foreign legal consultant, such that a foreign lawyer applying for certification must demonstrate that he or she has engaged in the practice of law in a foreign country for not less than three of the five years

---

3. We also revise the title of Chapter 12 to "Emeritus Lawyers Pro Bono Participation Program."

immediately preceding the application; he or she must not have been disciplined for professional misconduct by the bar or courts of any jurisdiction within the last seven years; and he or she must not have been denied admission to practice before the courts in any jurisdiction based upon the applicant's character and fitness during the ten-year period immediately preceding the application. We have deleted existing language in the rule requiring applicants to be over twenty-six years of age.

Additionally, in Bar Rule 16-1.3 (Activities), we amend subdivision (a) (Rendering Legal Advice), as recommended by the Bar; however, we decline to adopt the proposed amendments in subdivision (b) (Representing Status as Member of The Florida Bar), which would serve to delete the requirement that foreign legal consultants provide clients a letter disclosing the extent of their professional liability insurance coverage, as well as the fact that the client will not have access to the Clients' Security Fund in any discipline case against the foreign lawyer. We believe these disclosures serve an important role in protecting clients.

Finally, we amend several rules in Chapter 17 of the Bar Rules (Authorized House Counsel Rule), as proposed by the Bar, to allow both lawyers licensed to practice law in any United States jurisdiction other than Florida, and those authorized to practice as a lawyer or counselor in a foreign jurisdiction, to serve as authorized house counsel. Within Chapter 17, we delete existing Bar Rule 17-1.7

(Immunity from Prosecution) in its entirety, because this rule is no longer necessary. However, because the rule amendments we adopt in this case will now permit foreign lawyers to serve as authorized house counsel, such foreign lawyers who are duly registered as authorized house counsel under Chapter 17 of the Bar Rules will not be subject to prosecution for the unlicensed practice of law for acting as counsel to a business organization prior to the effective date of these rule amendments.

## CONCLUSION

Accordingly, the Court amends the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The comments are offered for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective on February 1, 2018, at 12:01 a.m.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – Rules Regulating The Florida Bar

John F. Harkness, Jr., Executive Director, Michael J. Higer, President, Michelle R. Suskauer, President-Elect, William J. Schifino, Jr., Past President, Lori S. Holcomb, Director, Division of Ethics and Consumer Protection, and Elizabeth Clark Tarbert, Ethics Counsel, The Florida Bar, Tallahassee, Florida,

for Petitioner

Thomas O. Wells of Wells & Wells, P.A., Coral Gables, Florida; and Timothy P. Chinaris, Nashville, Tennessee,

Responding with Comments

# APPENDIX

## RULE 1-3.2      MEMBERSHIP CLASSIFICATIONS

(a)   **Members in Good Standing.**

(1)      Members of The Florida Bar in good standing ~~shall~~ mean~~s~~ only those persons licensed to practice law in Florida who have paid annual membership fees ~~or dues~~ for the current year and who are not retired, resigned, delinquent, on the inactive list for incapacity, or suspended ~~members~~.

(2)      Members of The Florida Bar who have elected inactive status, who have paid annual membership fees for the current year, and who are not retired, resigned, delinquent, suspended, or on the inactive list for incapacity, are considered to be in good standing only for purposes of obtaining a certificate of good standing and for no other purpose.  A certificate of good standing issued to an inactive member will reflect the member's inactive status.

(b)   **Conditionally Admitted Members.**  The Supreme Court of Florida may admit a person with a prior history of drug, alcohol, or psychological problems to membership in The Florida Bar and impose conditions of probation as the court deems appropriate ~~up~~on that member.  The period of probation ~~shall~~will be no longer than 5 years, or for ~~such~~an indefinite period of time as the court ~~may~~ deem~~s~~ appropriate by conditions in its order.  The conditions may include, but not be limited to, participation in a rehabilitation program, periodic blood and urine analysis, periodic psychological examinations, or supervision by another member of The Florida Bar.  The probation ~~shall~~will be monitored by The Florida Bar and the costs ~~thereof shall be~~ paid by the member on probation.  A failure to observe the conditions of probation or a finding of probable cause as to conduct of the member committed during the period of probation may terminate the probation and subject the member to all available disciplinary sanctions.  Proceedings to determine compliance with conditions of admission ~~shall~~will be processed in the same manner as matters of contempt provided elsewhere in these Rules Regulating The Florida Bar.  If necessary, the court may assign a judicial referee to take testimony, receive evidence, and make findings of fact in the manner prescribed in the rule concerning procedures before a referee.  The findings of the referee may be appealed as provided in the rule for procedures before the supreme court.

(c)   **Inactive Members.**  Inactive members of The Florida Bar ~~shall~~ mean~~s~~ only those members who have properly elected to be classified as inactive in the manner elsewhere provided.

Inactive members ~~shall~~will:

(1) – (3)   [No Change]

(4)    not hold themselves out as being able to practice law in Florida or render advice on matters of Florida law unless certified as an emeritus lawyer under chapter 12 of these rules;

(5)    not hold any position that requires the person to be a licensed Florida ~~attorney~~lawyer;

(6) – (7)   [No Change]

(8)    certify ~~up~~on election of inactive status that they will comply with all applicable restrictions and limitations imposed on inactive members of The Florida Bar, unless certified as an emeritus lawyer under chapter 12 of these rules.

Failure of an inactive member to comply with all these requirements ~~thereof shall be~~is cause for disciplinary action.

An inactive member may, at any time, apply for reinstatement to active membership in good standing to become eligible to practice law in Florida in the manner provided in rule 1-3.7.


**RULE 1-7.5      RETIRED, INACTIVE, DELINQUENT MEMBERS**

A member who is retired, inactive, or delinquent ~~shall not practice~~is prohibited from practicing law in this state until reinstated as provided in these rules, except retired or inactive members who are certified as emeritus lawyers under chapter 12 of these rules.


**RULE 1-12.1      AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS**

(a)  **Authority to Amend.**  The board of governors of The Florida Bar ~~shall have~~has the authority to amend chapters 7 and 9, as well as the standards for the individual areas of certification within chapter 6 of these Rules Regulating The Florida Bar, consistent with the notice, publication, and comments requirements

provided below.  Only the Supreme Court of Florida shall have~~has~~ the authority to amend all other chapters of these Rules Regulating The Florida Bar.

**(b)   [No Change]**

**(c)   Board Review of Proposed Amendments.**  The board of governors ~~shall~~will review proposed amendments by referral of the proposal to an appropriate board committee ~~thereof~~ for substantive review.  After substantive review, an appropriate committee of the board ~~shall~~will review the proposal for consistency with these rules and the policies of The Florida Bar.  After completion of review, a recommendation concerning the proposal ~~shall~~will be made to the board.

**(d)   Notice of Proposed Board Action.**  Notice of the proposed action of the board on a proposed amendment ~~shall~~will be given in an edition of The Florida Bar News*News* and on The Florida Bar website ~~that is published~~ prior to the meeting of the board at which the board action is taken.  The notice ~~shall~~will identify the rule(s) to be amended and ~~shall~~ state in general terms the nature of the proposed amendments.

**(e)   Comments by Members.**  Any member may request a copy of the proposed amendments and may file written comments concerning them.  The comments ~~shall~~must be filed with the executive director sufficiently in advance of the board meeting to allow for ~~copying and~~ distribution to the members of the board.

**(f)      Approval of Amendments.**  Amendments to other than chapters 7 and 9, as well as the standards for the individual areas of certification within chapter 6 of these Rules Regulating The Florida Bar ~~shall~~must be by petition to the Supreme Court of Florida.  Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar ~~shall~~must be filed 90 days after filing them with The Florida Bar.

**(g)   Notice of Intent to File Petition.**  Notice of intent to file a petition to amend these Rules Regulating The Florida Bar ~~shall~~will be published in The Florida Bar News*News* and on The Florida Bar website at least 30 days before the filing of the petition.  The notice ~~shall set forth the text of the proposed amendments~~will identify the rule(s) to be amended, state in general terms the nature of the proposed amendments, state the date the petition will be filed, and state that any comments or objections must be filed within 30 days of filing the petition.  The full text of the proposed amendment(s) will be published on The

Florida Bar website.  A copy of all comments or objections ~~shall~~must be served on the executive director of The Florida Bar and any persons who may have made an appearance in the matter.

**(h)   Action by the Supreme Court of Florida.**  The court ~~shall~~will review all proposed amendments filed under this rule and ~~such~~any amendments ~~shall~~will not become effective until an order is issued approving them.  ~~Final~~A summary of final action of the court ~~shall~~will be reported in The Florida Bar ~~News~~*News* and on The Florida Bar website.

**(i)   [No Change]**

## RULE 3-2.1        GENERALLY

Wherever used in these rules the following words or terms ~~shall~~ have the meaning ~~herein~~ set forth below unless the~~ir~~ use ~~thereof shall~~ clearly indicate~~s~~ a different meaning:

**(a)   Bar Counsel.**  ~~A~~Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules.

**(b)   The Board or the Board of Governors.**  The board or the board of governors is the board of governors of The Florida Bar.

**(c)   Complainant or Complaining Witness.**  ~~Any~~A complainant or complaining witness is any person who has complained of the conduct of any member of The Florida Bar to any officer or agency of The Florida Bar.

**(d)   This Court or the Court.**  ~~The~~This court or the court is the Supreme Court of Florida.

**(e)   Court of this State.**  ~~A~~Court of this state is a state court authorized and established by the constitution or laws of the state of Florida.

**(f)   Diversion to Practice and Professionalism Enhancement Programs.**  ~~The~~Diversion to practice and professionalism enhancement programs is removal of a disciplinary matter from the disciplinary system and placement of the matter in a skills enhancement program in lieu of a disciplinary sanction.

**(g)   Executive Committee.**  ~~The~~Executive committee is the executive committee of the board of governors of The Florida Bar.

**(h) Executive Director.** ~~The~~Executive director is the executive director of The Florida Bar.

**(i) Inquiry.** Inquiry is a written communication received by bar counsel questioning the conduct of a member of The Florida Bar.

**(i̶j) Practice and Professionalism Enhancement Programs.** ~~Programs~~Practice and professionalism enhancement programs are programs operated either as a diversion from disciplinary action or as a part of a disciplinary sanction that are intended to provide educational opportunities to members of the bar for enhancing skills and avoiding misconduct allegations.

**(j̶k) Probable Cause.** ~~A~~Probable cause is a finding by an authorized agency that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action.

**(k̶*l*) Referral to Practice and Professionalism Enhancement Programs.** ~~Placement~~Referral to practice and professionalism enhancement programs is placement of a lawyer in skills enhancement programs as a disciplinary sanction.

**(*l*̶m) Referee.** ~~A~~Referee is a judge or retired judge appointed to conduct proceedings as provided under these rules.

**(m̶n) Respondent.** ~~A~~Respondent is a member of The Florida Bar or ~~an attorney~~lawyer subject to these rules who is accused of misconduct or whose conduct is under investigation.

**(n̶*o*) Staff Counsel.** ~~A~~Staff counsel is a lawyer employee of The Florida Bar designated by the executive director and authorized by these Rules Regulating The Florida Bar to approve formal complaints, conditional guilty pleas for consent judgments, and diversion recommendations and to make appointment of bar counsel.

**(*o*̶p) Chief Branch Discipline Counsel.** Chief branch discipline counsel is the counsel in charge of a branch office of The Florida Bar. Any counsel employed by The Florida Bar may serve as chief branch discipline counsel at the direction of the regularly assigned chief branch discipline counsel or staff counsel.

**(p̶q) Designated Reviewer.** The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned with respect to a particular grievance committee or matter. The designated

reviewer for a special grievance committee will be selected by the president and approved by the board.

(~~q~~r) **Final Adjudication.** ~~A~~Final adjudication is a decision by the authorized disciplinary authority or court issuing a sanction for professional misconduct that is not subject to judicial review except on direct appeal to the Supreme Court of the United States.

**RULE 3-7.5**      **PROCEDURES BEFORE THE BOARD OF GOVERNORS**

(a)    **Review by the Designated Reviewer.** Notice of grievance committee action recommending either diversion to a practice and professionalism enhancement program or finding no probable cause, no probable cause with a letter of advice, minor misconduct, or probable cause ~~shall~~will be given to the designated reviewer for review. The designated reviewer may request grievance committee reconsideration or refer the matter to the disciplinary review committee of the board of governors within 30 days of notice of grievance committee action. The request for ~~a~~ grievance committee reconsideration or referral to the disciplinary review committee ~~shall~~must be in writing and ~~shall~~must be submitted to bar counsel. For purposes of this subdivision letters, memoranda, handwritten notes, facsimile documents, and e-mail ~~shall~~ constitute communication "in writing."

(1)    *Requests for Grievance Committee Reconsideration.* If the designated reviewer requests grievance committee reconsideration, bar counsel ~~shall~~ forwards the request to the chair of the grievance committee and ~~shall~~ gives notice to the respondent and complainant that the request has been made. If the grievance committee agrees to reconsider the matter, the rule prescribing procedures before a grievance committee ~~shall apply~~applies.

(2)    *Referrals to Disciplinary Review Committee and Board of Governors.* If the designated reviewer refers the matter to the disciplinary review committee, bar counsel ~~shall~~ prepares and submits a discipline agenda item for consideration by the committee. Bar counsel ~~shall~~must give notice to respondent and complainant that the designated reviewer has made the referral for review.

(3)    *Nature of Disciplinary Review Committee and Board of Governors Review.* The Florida Bar is a party in disciplinary proceedings and has no authority to adjudicate rights in those proceedings. Any ~~such~~ review on referral

from a designated reviewer is ~~in the nature of~~ consultation on pending litigation and ~~therefore~~ is not subject to intervention by persons outside the relationship between the bar and its counsel.

(4) *Effect of Failure to Timely Make the Request for Reconsideration or Referral for Review.* If the designated reviewer fails to make the request for reconsideration or referral within the time prescribed, the grievance committee action ~~shall~~ become<u>s</u> final.

(5) [No Change]

**(b) Review of Grievance Committee Matters.** The disciplinary review committee ~~shall~~ review<u>s</u> those grievance committee matters referred to it by a designated reviewer and ~~shall make a~~ report<u>s</u> to the board. The disciplinary review committee may confirm, reject, or amend the recommendation of the designated reviewer in whole or in part. The report of the disciplinary review committee ~~shall be~~<u>is</u> final unless overruled by the board. Recommendations of the disciplinary review committee may include:

(1) – (7) [No Change]

**(c) [No Change]**

**(d) Notice of Board Action.** Bar counsel ~~shall~~<u>must</u> give notice of board action to the respondent, complainant, and grievance committee.

**(e) Finding of No Probable Cause.** A finding of no probable cause by the board ~~shall be~~<u>is</u> final and no further proceedings ~~shall be had~~<u>may be conducted</u> in the matter by The Florida Bar <u>unless a reason arises at a later time to re-open the file</u>.

**(f) Control of Proceedings.** Bar counsel, however appointed, ~~shall be~~<u>is</u> subject to the direction of the board at all times. The board, in the exercise of its discretion as the governing body of The Florida Bar, has the power to terminate disciplinary proceedings before a referee prior to the receipt of evidence by the referee, whether ~~such~~<u>these</u> proceedings have been instituted ~~up~~on a finding of probable cause by the board or a grievance committee.

**(g) Filing Service on Board of Governors.** All matters to be filed with or served ~~up~~on the board ~~shall~~<u>must</u> be addressed to the board of governors and filed with the executive director.

**(h)   Custodian of Bar Records.**  The executive director or his designees ~~shall be~~are the custodian of the official records of The Florida Bar.

**RULE 3-7.16   LIMITATION ON TIME TO ~~BRING COMPLAINT~~OPEN INVESTIGATION**

(a)   **Time for ~~Inquiries,~~Initiating Investigation of Complaints~~,~~ and Re-opened Cases.**  ~~Inquiries raised or complaints presented by or to The Florida Bar under these rules shall be commenced~~

(1)   *Initial Complaint or Investigation.*  A complainant must make a written inquiry to The Florida Bar within 6 years from the time the matter giving rise to the inquiry or complaint is discovered or, with due diligence, should have been discovered.  The Florida Bar must open an investigation initiated by The Florida Bar within 6 years from the time the matter giving rise to the investigation is discovered or, with due diligence, should have been discovered.  ~~A reopened disciplinary investigation shall not be barred by this rule if the investigation is reopened within 1 year of the date on which the matter was closed, except that reopened investigations based on deferrals made in accord with bar policy and as authorized elsewhere in these Rules Regulating The Florida Bar shall not be barred if reopened within 1 year of the conclusion of the civil, criminal, or other proceedings on which deferral was based.~~

(2)   *Re-opened Investigations.*  A re-opened disciplinary investigation is not time barred by this rule if the investigation is re-opened within 1 year after the date on which the matter was closed, except that a re-opened investigation based on a deferral made in accordance with bar policy and as authorized elsewhere in these Rules Regulating The Florida Bar is not barred if re-opened within 1 year after actual notice of the conclusion of the civil, criminal, or other proceedings on which the deferral was based.

(3)   *Deferred Investigations.*  A disciplinary investigation which began with the opening of a discipline file and bar inquiries to a respondent within the 6-year time period as described in this rule and was then deferred in accordance with bar policy and the Rules Regulating The Florida Bar, is not time barred under this rule if a grievance committee finds probable cause and the bar files its formal complaint within 1 year after actual notice of the conclusion of the civil, criminal, or other proceedings on which deferral was based.

**(b) Exception for Theft or Conviction of a Felony Criminal Offense.** There ~~shall be~~is no limit on the time in which to present, reopen, or bring a matter alleging theft or conviction of a felony criminal offense by a member of The Florida Bar.

**(c) Tolling Based on Fraud, Concealment, or Misrepresentation.** ~~In matters covered by this rule where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint, t~~The limitation of time in which to bring or reopen a~~n inquiry or~~ complaint within this rule ~~shall be~~is tolled~~.~~ where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint.

**(d) Constitutional Officers.** Inquiries raised or complaints presented by or to The Florida Bar about the conduct of a constitutional officer who is required to be a member in good standing of The Florida Bar ~~shall~~must be commenced within 6 years after the constitutional officer vacates office.

## CHAPTER 4 RULES OF PROFESSIONAL CONDUCT
## PREAMBLE: A LAWYER'S RESPONSIBILITIES

[No Change]

**Scope:**

[No Change]

**Terminology:**

"Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.

"Consult" or "consultation" denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.

"Confirmed in writing," when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person or a writing that a lawyer promptly transmits to the person confirming an oral informed consent. See "informed consent" below. If it is not feasible to obtain or transmit

the writing at the time the person gives informed consent, then the lawyer must obtain or transmit it within a reasonable time.

"Firm" or "law firm" denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship, or other association authorized to practice law; or lawyers employed in the legal department of a corporation or other organization.

"Fraud" or "fraudulent" denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.

"Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

"Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.

"Lawyer" denotes a person who is a member of The Florida Bar or otherwise authorized to practice in ~~any court of~~ the State of Florida.

"Partner" denotes a member of a partnership and a shareholder in a law firm organized as a professional corporation, or a member of an association authorized to practice law.

"Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.

"Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.

"Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.

"Screened" denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these rules or other law.

"Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.

"Tribunal" denotes a court, an arbitrator in a binding arbitration proceeding, or a legislative body, administrative agency, or other body acting in an adjudicative capacity. A legislative body, administrative agency, or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.

"Writing" or "written" denotes a tangible or electronic record of a communication or representation, including handwriting, typewriting, printing, photostating, photography, audio or video recording, and electronic communications. A "signed" writing includes an electronic sound, symbol or process attached to or logically associated with a writing and executed or adopted by a person with the intent to sign the writing.

## COMMENT

[No Change]

## RULE 4-1.8    CONFLICT OF INTEREST; PROHIBITED AND OTHER TRANSACTIONS

(a)    **Business Transactions With or Acquiring Interest Adverse to Client.**  A lawyer ~~shall not~~is prohibited from entering into a business transaction with a client or knowingly ~~acquire~~acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer's fee or expenses, unless:

(1) – (3)   [No Change]

(b)    **Using Information to Disadvantage of Client.**  A lawyer ~~shall not use~~is prohibited from using information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules.

(c)    **Gifts to Lawyer or Lawyer's Family.**  A lawyer ~~shall not~~is prohibited from soliciting any ~~substantial~~ gift from a client, including a testamentary gift, or ~~prepare~~preparing on behalf of a client an instrument giving the lawyer or a person

related to the lawyer any ~~substantial~~ gift unless the lawyer or other recipient of the gift is related to the client.  For purposes of this subdivision, related persons include a spouse, child, grandchild, parent, grandparent, or other relative with whom the lawyer or the client maintains a close, familial relationship.

**(d)   Acquiring Literary or Media Rights.**  Prior to the conclusion of representation of a client, a lawyer ~~shall not make or negotiate~~<u>is prohibited from making or negotiating</u> an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.

**(e)   Financial Assistance to Client.**  A lawyer ~~shall not provide~~<u>is prohibited from providing</u> financial assistance to a client in connection with pending or contemplated litigation, except that:

(1) – (2)   [No Change]

**(f)   Compensation by Third Party.**  A lawyer ~~shall not accept~~<u>is prohibited from accepting</u> compensation for representing a client from one other than the client unless:

(1) – (3)   [No Change]

**(g)   Settlement of Claims for Multiple Clients.**  A lawyer who represents 2 or more clients ~~shall not participate~~<u>is prohibited from participating</u> in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client.  The lawyer's disclosure ~~shall~~<u>must</u> include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

**(h)   Limiting Liability for Malpractice.**  A lawyer ~~shall not make~~<u>is prohibited from making</u> an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement.  A lawyer ~~shall not settle~~<u>is prohibited from settling</u> a claim for ~~such~~ liability <u>for malpractice</u> with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in ~~connection therewith~~<u>making the agreement</u>.

**(i)   Acquiring Proprietary Interest in Cause of Action.**  A lawyer ~~shall not acquire~~<u>is prohibited from acquiring</u> a proprietary interest in the cause of action

or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) – (2)   [No Change]

**(j)     Representation of Insureds.**  When a lawyer undertakes the defense of an insured other than a governmental entity, at the expense of an insurance company, in regard to an action or claim for personal injury or for property damages, or for death or loss of services resulting from personal injuries based ~~up~~on tortious conduct, including product liability claims, the Statement of Insured Client's Rights ~~shall~~must be provided to the insured at the commencement of the representation.  The lawyer ~~shall~~must sign the statement certifying the date on which the statement was provided to the insured.  The lawyer ~~shall~~must keep a copy of the signed statement in the client's file and ~~shall~~must retain a copy of the signed statement for 6 years after the representation is completed.  The statement ~~shall~~must be available for inspection at reasonable times by the insured, or by the appropriate disciplinary agency.  Nothing in the Statement of Insured Client's Rights ~~shall be deemed to~~ augments or detracts from any substantive or ethical duty of a lawyer or affect the extradisciplinary consequences of violating an existing substantive legal or ethical duty; nor ~~shall~~does any matter set forth in the Statement of Insured Client's Rights give rise to an independent cause of action or create any presumption that an existing legal or ethical duty has been breached.

## STATEMENT OF INSURED CLIENT'S RIGHTS

An insurance company has selected a lawyer to defend a lawsuit or claim against you.  This Statement of Insured Client's Rights is being given to you to assure that you are aware of your rights regarding your legal representation.  This disclosure statement highlights many, but not all, of your rights when your legal representation is being provided by the insurance company.

1.  [No Change]

2.  [No Change]

3.  *Directing the Lawyer.*  If your policy, like most insurance policies, provides for the insurance company to control the defense of the lawsuit, the lawyer will be taking instructions from the insurance company.  Under ~~such~~these policies, the lawyer cannot act solely on your instructions, and at the same time, cannot act contrary to your interests.  Your preferences should be communicated to the lawyer.

4. *Litigation Guidelines.* Many insurance companies establish guidelines governing how lawyers are to proceed in defending a claim. Sometimes those guidelines affect the range of actions the lawyer can take and may require authorization of the insurance company before certain actions are undertaken. You are entitled to know the guidelines affecting the extent and level of legal services being provided to you. ~~Upon~~On request, the lawyer or the insurance company should either explain the guidelines to you or provide you with a copy. If the lawyer is denied authorization to provide a service or undertake an action the lawyer believes necessary to your defense, you are entitled to be informed that the insurance company has declined authorization for the service or action.

5. [No Change]

6. [No Change]

7. [No Change]

8. [No Change]

9. [No Change]

10. *Reporting Violations.* If at any time you believe that your lawyer has acted in violation of your rights, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar call (850) 561-5839 or you may access the ~~Bar~~bar at ~~www.FlaBar.org~~www.floridabar.org.

**IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS, PLEASE ASK FOR AN EXPLANATION.**

CERTIFICATE

The undersigned ~~hereby~~ certifies that this Statement of Insured Client's Rights has been provided to .....(name of insured/client(s)).....

by .....(mail/hand delivery)..... at .....(address of insured/client(s) to which mailed or delivered~~,~~) on .....(date)......

_____

[Signature of ~~Attorney~~Lawyer]

_____
[Print/Type Name]

Florida Bar No.: _____

**(k)   Imputation of Conflicts.**  While lawyers are associated in a firm, a prohibition in the foregoing subdivisions (a) through (i) that applies to any one of them ~~shall apply~~applies to all of them.

## COMMENT

**Business transactions between client and lawyer**

A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property, or financial transaction with a client.  The requirements of subdivision (a) must be met even when the transaction is not closely related to the subject matter of the representation.  The rule applies to lawyers engaged in the sale of goods or services related to the practice of law.  See rule 4-5.7.  It does not apply to ordinary fee arrangements between client and lawyer, which are governed by rule 4-1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment for all or part of a fee.  In addition, the rule does not apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services.  In ~~such~~these types of transactions the lawyer has no advantage in dealing with the client, and the restrictions in subdivision (a) are unnecessary and impracticable.  Likewise, subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer's fee or expenses.

Subdivision (a)(1) requires that the transaction itself be fair to the client and that its essential terms be communicated to the client, in writing, in a manner that can be reasonably understood.  Subdivision (a)(2) requires that the client also be advised, in writing, of the desirability of seeking the advice of independent legal counsel.  It also requires that the client be given a reasonable opportunity to obtain ~~such~~ advice.  Subdivision (a)(3) requires that the lawyer obtain the client's informed consent, in a writing signed by the client, both to the essential terms of the transaction and to the lawyer's role.  When necessary, the lawyer should discuss both the material risks of the proposed transaction, including any risk presented by

the lawyer's involvement, and the existence of reasonably available alternatives and should explain why the advice of independent legal counsel is desirable.  See terminology (definition of informed consent).

The risk to a client is greatest when the client expects the lawyer to represent the client in the transaction itself or when the lawyer's financial interest otherwise poses a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's financial interest in the transaction.  Here the lawyer's role requires that the lawyer must comply, not only with the requirements of subdivision (a), but also with the requirements of rule 4-1.7.  Under that rule, the lawyer must disclose the risks associated with the lawyer's dual role as both legal adviser and participant in the transaction, such as the risk that the lawyer will structure the transaction or give legal advice in a way that favors the lawyer's interests at the expense of the client.  ~~Moreover, the~~The lawyer also must obtain the client's informed consent.  In some cases, ~~the lawyer's interest may be such that~~ rule 4-1.7 will preclude the lawyer from seeking the client's consent to the transaction because of the lawyer's interest.

If the client is independently represented in the transaction, subdivision (a)(2) of this rule is inapplicable, and the subdivision (a)(1) requirement for full disclosure is satisfied either by a written disclosure by the lawyer involved in the transaction or by the client's independent counsel.  The fact that the client was independently represented in the transaction is relevant in determining whether the agreement was fair and reasonable to the client as subdivision (a)(1) further requires.

**Gifts to lawyers**

A lawyer may accept a gift from a client, if the transaction meets general standards of fairness and if the lawyer does not prepare the instrument bestowing the gift.  For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted.  If a client offers the lawyer a more substantial gift, subdivision (c) does not prohibit the lawyer from accepting it, although ~~such a~~the gift may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent.  In any event, due to concerns about overreaching and imposition on clients, a lawyer may not suggest that a ~~substantial~~ gift be made to the lawyer or for the lawyer's benefit, except where the lawyer is related to the client as set forth in subdivision (c).  If effectuation of a ~~substantial~~ gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide and the lawyer should advise the client to seek advice of independent

counsel.  Subdivision (c) recognizes an exception where the client is related by blood or marriage to the donee ~~or the gift is not substantial~~.

This rule does not prohibit a ~~lawyer from seeking to have the~~ lawyer or a partner or associate of the lawyer ~~named~~from serving as personal representative of the client's estate or ~~to~~in another potentially lucrative fiduciary position in connection with a client's estate planning.  A lawyer may prepare a document that appoints the lawyer or a person related to the lawyer to a fiduciary office if the client is properly informed, the appointment does not violate rule 4-1.7, the appointment is not the product of undue influence or improper solicitation by the lawyer, and the client gives informed consent, confirmed in writing.~~Nevertheless, such appointments will be subject to the general conflict of interest provision in rule 4-1.7 when there is a significant risk that the lawyer's interest in obtaining the appointment will materially limit the lawyer's independent professional judgment in advising the client concerning the choice of a personal representative or other fiduciary.~~  In obtaining the client's informed consent to the conflict, the lawyer should advise the client in writing concerning ~~the nature and extent of the lawyer's financial interest in the appointment, as well as the availability of alternative candidates for the position~~who is eligible to serve as a fiduciary, that a person who serves as a fiduciary is entitled to compensation, and that the lawyer may be eligible to receive compensation for serving as a fiduciary in addition to any attorneys' fees that the lawyer or the lawyer's firm may earn for serving as a lawyer for the fiduciary.

### Literary rights

An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer.  Measures suitable in the representation of the client may detract from the publication value of an account of the representation.  Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee ~~shall~~will consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and subdivision (a) and (i).

### Financial assistance

Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because ~~such~~financial assistance gives

lawyers too great a financial stake in the litigation. These dangers do not warrant a prohibition on a lawyer advancing a client court costs and litigation expenses, including the expenses of diagnostic medical examination used for litigation purposes and the reasonable costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

**Person paying for lawyer's services**

Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company), or a co-client (such as a corporation sued along with one or more of its employees). Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing ~~such~~these representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client. See also rule 4-5.4(d) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).

Sometimes, it will be sufficient for the lawyer to obtain the client's informed consent regarding the fact of the payment and the identity of the third-party payer. If, however, the fee arrangement creates a conflict of interest for the lawyer, then the lawyer must comply with rule 4-1.7. The lawyer must also conform to the requirements of rule 4-1.6 concerning confidentiality. Under rule 4-1.7(a), a conflict of interest exists if there is significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in the fee arrangement or by the lawyer's responsibilities to the third-party payer (for example, when the third-party payer is a co-client). Under rule 4-1.7(b), the lawyer may accept or continue the representation with the informed consent of each affected client, unless the conflict is nonconsentable under that subdivision. Under rule 4-1.7(b), the informed consent must be confirmed in writing or clearly stated on the record at a hearing.

**Aggregate settlements**

[No Change]

**Acquisition of interest in litigation**

[No Change]

**Representation of insureds**

As with any representation of a client when another person or client is paying for the representation, the representation of an insured client at the request of the insurer creates a special need for the lawyer to be cognizant of the potential for ethical risks. The nature of the relationship between a lawyer and a client can lead to the insured or the insurer having expectations inconsistent with the duty of the lawyer to maintain confidences, avoid conflicts of interest, and otherwise comply with professional standards. When a lawyer undertakes the representation of an insured client at the expense of the insurer, the lawyer should ascertain whether the lawyer will be representing both the insured and the insurer, or only the insured. Communication with both the insured and the insurer promotes their mutual understanding of the role of the lawyer in the particular representation. The Statement of Insured Client's Rights has been developed to facilitate the lawyer's performance of ethical responsibilities. The highly variable nature of insurance and the responsiveness of the insurance industry in developing new types of coverages for risks arising in the dynamic American economy render it impractical to establish a statement of rights applicable to all forms of insurance. The Statement of Insured Client's Rights is intended to apply to personal injury and property damage tort cases. It is not intended to apply to workers' compensation cases. Even in that relatively narrow area of insurance coverage, there is variability among policies. For that reason, the statement is necessarily broad. It is the responsibility of the lawyer to explain the statement to the insured. In particular cases, the lawyer may need to provide additional information to the insured.

Because the purpose of the statement is to assist laypersons in understanding their basic rights as clients, it is necessarily abbreviated. Although brevity promotes the purpose for which the statement was developed, it also necessitates incompleteness. For these reasons, it is specifically provided that the statement ~~shall~~does not ~~serve to~~ establish any legal rights or duties, nor create any presumption that an existing legal or ethical duty has been breached. As a result, the statement and its contents should not be invoked by opposing parties as grounds for disqualification of a lawyer or for procedural purposes. The purpose of the statement would be subverted if it could be used in such a manner.

The statement is to be signed by the lawyer to establish that it was timely provided to the insured, but the insured client is not required to sign it.  It is in the best interests of the lawyer to have the insured client sign the statement to avoid future questions, but it is considered impractical to require the lawyer to obtain the insured client's signature in all instances.

Establishment of the statement and the duty to provide it to an insured in tort cases involving personal injury or property damage should not be construed as lessening the duty of the lawyer to inform clients of their rights in other circumstances.  When other types of insurance are involved, when there are other third-party payors of fees, or when multiple clients are represented, similar needs for fully informing clients exist, as recognized in rules 4-1.7(c) and 4-1.8(f).

**Imputation of prohibitions**

[No Change]

**RULE 4-5.8         PROCEDURES FOR LAWYERS LEAVING LAW FIRMS AND DISSOLUTION OF LAW FIRMS**

**(a)   [No Change]**

**(b)   Client's Right to Counsel of Choice.**  Clients have the right to expect that they may choose counsel when legal services are required and, with few exceptions, nothing that lawyers and law firms do ~~shall have any effect on~~affects the exercise of that right.

**(c)   Contact With Clients.**

        (1)     *Lawyers Leaving Law Firms.*  Absent a specific agreement otherwise, a lawyer who is leaving a law firm ~~shall~~may not unilaterally contact those clients of the law firm for purposes of notifying them about the anticipated departure or to solicit representation of the clients unless the lawyer has approached an authorized representative of the law firm and attempted to negotiate a joint communication to the clients concerning the lawyer leaving the law firm and bona fide negotiations have been unsuccessful.

        (2)     *Dissolution of Law Firm.*  Absent a specific agreement otherwise, a lawyer involved in the dissolution of a law firm ~~shall~~may not unilaterally contact clients of the law firm unless, after bona fide negotiations,

authorized members of the law firm have been unable to agree on a method to provide notice to clients.

**(d) Form for Contact With Clients.**

(1) *Lawyers Leaving Law Firms.* When a joint response has not been successfully negotiated, unilateral contact by individual members or the law firm ~~shall~~must give notice to clients that the lawyer is leaving the law firm and provide options to the clients to choose to remain a client of the law firm, to choose representation by the departing lawyer, or to choose representation by other lawyers or law firms.

(2) *Dissolution of Law Firms.* When a law firm is being dissolved and no procedure for contacting clients has been agreed ~~upon~~to, unilateral contact by members of the law firm ~~shall~~must give notice to clients that the firm is being dissolved and provide options to the clients to choose representation by any member of the dissolving law firm, or representation by other lawyers or law firms.

(3) *Liability for Fees and Costs.* In all instances, notice to the client required under this rule ~~shall~~must provide information concerning potential liability for fees for legal services previously rendered, costs expended, and how any deposits for fees or costs will be handled. In addition, if appropriate, notice ~~shall~~must be given that reasonable charges may be imposed to provide a copy of any file to a successor lawyer.

**(e) Nonresponsive Clients.**

(1) *Lawyers Leaving Law Firms.* In the event a client fails to advise the lawyers and law firm of the client's intention in regard to who is to provide future legal services when a lawyer is leaving the firm, the client ~~shall be considered as remaining~~remains a client of the firm until the client advises otherwise.

(2) *Dissolution of Law Firms.* In the event a client fails to advise the lawyers of the client's intention in regard to who is to provide future legal services when a law firm is dissolving, the client ~~shall be considered as remaining~~remains a client of the lawyer who primarily provided the prior legal services on behalf of the firm until the client advises otherwise.

## COMMENT

The current rule of law regarding ownership of client files is discussed in *Donahue v. Vaughn*, 721 So. 2d 356 (Fla. 5th DCA 1998), and *Dowda & Fields, P.A. v. Cobb*, 452 So. 2d 1140 (Fla. 5th DCA 1984).  A lawyer leaving a law firm, when the law firm remains available to continue legal representation, has no right nor expectation to take client files without an agreement with the law firm to do so.

While clients have the right to choose counsel, ~~such~~that choice may implicate obligations~~.  Those obligations may include~~ such as a requirement to pay for legal services previously rendered and costs expended in connection with the representation as well as a reasonable fee for copying the client's file.

Whether individual members have any individual legal obligations to a client is a matter of contract law, tort law, or court rules that is outside the scope of rules governing lawyer conduct.  Generally, individual lawyers have such obligations only if provided for in the contract for representation.  Nothing in this rule or in the contract for representation may alter the ethical obligations that individual lawyers have to clients as provided elsewhere in these rules.

~~It is anticipated that in~~In most instances a lawyer leaving a law firm and the law firm ~~will~~should engage in bona fide, good faith negotiations and craft a joint communication providing adequate information to the client so that the client may make a fully informed decision concerning future representation.  In those instances in which bona fide negotiations are unsuccessful, unilateral communication may be made by the departing lawyer or the law firm.  In ~~such~~those circumstances, great care should be taken to meet the obligation of adequate communication and for this reason the specific requirements of subdivisions (d)(1) & (3) are provided.

Lawyers and firms should engage in bona fide, good faith negotiations within a reasonable period of time following their knowledge of either the anticipated change in firm composition or, if the anticipated change is unknown, within a reasonable period of time after the change in firm composition.  The actual notification to clients should also occur within a reasonable period of time.  What is reasonable will depend on the circumstances, including the nature of the matters in which the lawyer represented the clients and whether the affected clients have deadlines that need to be met within a short period of time.

For purposes of this rule, clients who should be notified of the change in firm composition include current clients for whom the departing lawyer has

- 37 -

provided significant legal services with direct client contact. Clients need not be notified of the departure of a lawyer with whom the client has had no direct contact. Clients whose files are closed need not be notified unless the former client contacts the firm, at which point the firm should notify the former client of the departure of any lawyer who performed significant legal services for that former client and had direct contact with that former client.

Although contact by telephone is not prohibited under this rule, proof of compliance with the requirements of this rule may be difficult unless the notification is in writing.

In order to comply with the requirements of this rule, both departing lawyers and the law firm should be given access to the names and contact information of all clients for whom the departing lawyer has provided significant legal services and with whom the lawyer has had direct contact.

If neither the departing lawyer nor the law firm intends to continue representation of the affected clients, they may either agree on a joint letter providing that information to those clients, or may separately notify the affected clients after bona fide, good faith negotiations have failed. Any obligation to give the client reasonable notice, protect the client's interests on withdrawal, and seek permission of a court to withdraw may apply to both the departing lawyer and lawyers remaining in the firm.

Most law firms have some written instrument creating the law firm and specifying procedures to be employed upon dissolution of the firm. However, when such an instrument does not exist or does not adequately provide for procedures in the event of dissolution, the provisions of this rule are provided so that dissolution of the law firm does not disproportionately affect client rights.

As in instances of a lawyer departing a law firm, lawyers involved in the dissolution of law firms have a continuing obligation to provide adequate information to a client so that the client may make informed decisions concerning future representation.

The Florida Bar's ~~Law Office Management Advisory Service~~Practice Resource Institute has sample forms for notice to clients and sample partnership and other contracts that are available to members. The forms may be accessed on the bar's website, *~~www.flabar.org~~*www.floridabar.org, or by calling The Florida Bar headquarters in Tallahassee.

Lawyers involved in either a change in law firm composition or law firm dissolution may have duties to notify the court if the representation is in litigation. If the remaining law firm will continue the representation of the client, no notification of the change in firm composition to the court may be required, but such a notification may be advisable. If the departing lawyer will take over representation of the client, a motion for substitution of counsel or a motion by the firm to withdraw from the representation may be appropriate. If the departing lawyer and the law firm have made the appropriate request for the client to select either the departing lawyer or the law firm to continue the representation, but the client has not yet responded, the law firm should consider notifying the court of the change in firm composition, although under ordinary circumstances, absent an agreement to the contrary, the firm will continue the representation in the interim. If the departing lawyer and the law firm have agreed regarding who will continue handling the client's matters then, absent disagreement by the client, the agreement normally will determine whether the departing lawyer or the law firm will continue the representation.

**RULE 4-7.18       DIRECT CONTACT WITH PROSPECTIVE CLIENTS**

(a)   **Solicitation.**  Except as provided in subdivision (b) of this rule, a lawyer may not:

(1)     solicit in person, or permit employees or agents of the lawyer to solicit in person on the lawyer's behalf, professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.  The term "solicit" includes contact in person, by telephone, telegraph, or facsimile, by electronic means that include real-time communication face-to-face such as video telephone or video conference, or by other communication directed to a specific recipient and includes any written form of communication, including any electronic mail communication, directed to a specific recipient and not meetingthat does not meet the requirements of subdivision (b) of this rule and rules 4-7.11 through 4-7.17 of these rules.

(2)     [No Change]

(b)   **Written Communication.**

(1)     [No Change]

(2)     Written communications to prospective clients for the purpose of obtaining professional employment that are not prohibited by subdivision (b)(1) are subject to the following requirements:

(A) [No Change]

(B) Each ~~page~~separate enclosure of such communication and the face of an envelope containing the communication must be reasonably prominently marked "advertisement" in ink that contrasts with both the background it is printed on and other text appearing on the same page.  If the written communication is in the form of a self-mailing brochure or pamphlet, the "advertisement" mark must be reasonably prominently marked on the address panel of the brochure or pamphlet, ~~and~~ on ~~each panel of~~ the inside of the brochure or pamphlet, and on each separate enclosure.  If the written communication is sent via electronic mail, the subject line must begin with the word "Advertisement."  ~~Brochures solicited by clients or prospective clients need not contain the "advertisement" mark.~~

(C) – (H)     [No Change]

(I) A written communication seeking employment by a specific prospective client in a specific matter ~~shall~~must not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client's legal problem.

(3)     The requirements in subdivision (b)(2) of this rule do not apply to communications between lawyers, between lawyers and their own current and former clients, or between lawyers and their own family members, or to communications by the lawyer at a prospective client's request.

**COMMENT**

[No Change]

**RULE 5-1.1     TRUST ACCOUNTS**

    **(a)     Nature of Money or Property Entrusted to Attorney.**

        (1)     *Trust Account Required; Location of Trust Account; Commingling Prohibited.*  A lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation.  All funds, including advances for fees, costs, and expenses, must be kept in a separate <u>federally insured </u>bank<u>, credit union</u> or savings and loan association account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person and clearly labeled and designated as a trust account except:

        (A) – (B)     [No Change]

        (2)     *Compliance with Client Directives.*  Trust funds may be separately held and maintained other than in a bank<u>, credit union</u> or savings and loan association account if the lawyer receives written permission from the client to do so and provided that written permission is received before maintaining the funds other than in a separate account.

        (3)     [No Change]

    **(b)     Application of Trust Funds or Property to Specific Purpose.**  Money or other property entrusted to ~~an attorney~~<u>a lawyer</u> for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose.  Money and other property of clients coming into the hands of ~~an attorney~~<u>a lawyer</u> are not subject to counterclaim or setoff for attorney's fees, and a refusal to account for and deliver over ~~such~~<u>the</u> property ~~up~~on demand ~~shall be deemed a~~<u>is</u> conversion.

    **(c)     Liens Permitted.**  This subchapter does not preclude the retention of money or other property ~~up~~on which the lawyer has a valid lien for services nor does it preclude the payment of agreed fees from the proceeds of transactions or collection.

    **(d)     [No Change]**

    **(e)     Notice of Receipt of Trust Funds; Delivery; Accounting.**  ~~Upon~~<u>On</u> receiving funds or other property in which a client or third person has an interest, a

lawyer ~~shall~~must promptly notify the client or third person.  Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer ~~shall~~must promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, ~~up~~on request by the client or third person, ~~shall~~must promptly render a full accounting regarding ~~such~~the property.

**(f)     Disputed Ownership of Trust Funds.**  When in the course of representation a lawyer is in possession of property in which 2 or more persons (1 of whom may be the lawyer) claim interests, the property ~~shall~~must be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm ~~shall~~must be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute ~~shall~~must be kept separate by the lawyer until the dispute is resolved. The lawyer ~~shall~~must promptly distribute all portions of the property as to which the interests are not in dispute.

**(g)     Interest on Trust Accounts (IOTA) Program.**

(1)     *Definitions.*  As used in this rule, the term:

(A) "Nominal or short term" describes funds of a client or third person that~~, pursuant to subdivision (3), below,~~ the lawyer has determined cannot earn income for the client or third person in excess of the costs to secure the income.

(B) – (C)     [No Change]

(D) "Eligible Institution" means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, <u>any state or federal credit union authorized by federal or state laws to do business in Florida and insured by the National Credit Union Share Insurance Fund,</u> or any successor insurance <u>entities or</u> corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Exchange Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below.

(E) "Interest or dividend-bearing trust account" means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a money market fund.  A daily financial institution repurchase agreement must be fully collateralized by, and an

open-end money market fund must consist solely of, United States Government Securities.  A daily financial institution repurchase agreement may be established only with an eligible institution that is deemed to be "well capitalized" or "adequately capitalized" as defined by applicable federal statutes and regulations.  An open-end money market fund must hold itself out as a money market fund as defined by applicable federal statutes and regulations under the Investment Company Act of 1940, and have total assets of at least $250 million.  The funds covered by this rule shall beare subject to withdrawal upon request and without delay.

(2)     *Required Participation.*  All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing law from an office or other business location within the state of Florida shallmust be deposited into one or more IOTA accounts, unless the funds may earn income for the client or third person in excess of the costs incurred to secure the income, except as provided elsewhere in this chapter.  Only trust funds that are nominal or short term shallmust be deposited into an IOTA account.  The Florida bar member shallmust certify annually, in writing, that the bar member is in compliance with, or is exempt from, the provisions of this rule.

(3)     *Determination of Nominal or Short-Term Funds.*  The lawyer shallmust exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term.  In the exercise of this good faith judgment, the lawyer shallmust consider such factors as the:

(A) the amount of a client's or third person's funds to be held by the lawyer or law firm;

(B) the period of time suchthe funds are expected to be held;

(C) the likelihood of delay in the relevant transaction(s) or proceeding(s);

(D) thelawyer or law firm's cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and

(E) minimum balance requirements and/or service charges or fees imposed by the eligible institution.

The determination of whether a client's or third person's funds are nominal or short term shall rests in the sound judgment of the lawyer or law firm.

No lawyer ~~shall~~will be charged with ethical impropriety or other breach of professional conduct based on the exercise of ~~such~~the lawyer's good faith judgment.

(4)     *Notice to Foundation.*  Lawyers or law firms ~~shall~~must advise the ~~Foundation~~foundation, at ~~Post Office Box 1553, Orlando, Florida 32802-1553,~~its current location posted on The Florida Bar's website, of the establishment of an IOTA account for funds covered by this rule.  ~~Such~~The notice ~~shall~~must include:  the IOTA account number as assigned by the eligible institution; the name of the lawyer or law firm on the IOTA account; the eligible institution name; the eligible institution address; and the name and Florida Bar ~~attorney~~ number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established the IOTA account.

(5)     *Eligible Institution Participation in IOTA.*  Participation in the IOTA program is voluntary for banks, credit unions, savings and loan associations, and investment companies.  Institutions that choose to offer and maintain IOTA accounts must meet the following requirements:

(A) Interest Rates and Dividends.  Eligible institutions ~~shall~~must maintain IOTA accounts which pay the highest interest rate or dividend generally available from the institution to its non-IOTA account customers when IOTA accounts meet or exceed the same minimum balance or other account eligibility qualifications, if any.

(B) Determination of Interest Rates and Dividends.  In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may consider factors, in addition to the IOTA account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that ~~such~~these factors do not discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.

(C) Remittance and Reporting Instructions.  Eligible institutions ~~shall~~must:

(i)     calculate and remit interest or dividends on the balance of the deposited funds, in accordance with the institution's standard practice for non-IOTA account customers,

less reasonable service charges or fees, if any, in connection with the deposited funds, at least quarterly, to the ~~Foundation~~foundation;

(ii)     transmit with each remittance to the ~~Foundation~~foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer's or law firm's IOTA account number as assigned by the institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and

(iii)     transmit to the depositing lawyer or law firm, for each remittance, a statement showing the amount of interest or dividend paid to the ~~Foundation~~foundation, the rate of interest applied, and the period for which the statement is made.

(6)     *Small Fund Amounts.*  The ~~Foundation~~foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable eligible institution service charges or fees.

(7)     *Confidentiality and Disclosure.*  The ~~Foundation shall~~foundation must protect the confidentiality of information regarding a lawyer's or law firm's trust account obtained by virtue of this rule.  However, the ~~Foundation shall~~foundation must, ~~up~~on an official written inquiry of The Florida Bar made in the course of an investigation conducted under these Rules Regulating The Florida Bar, disclose requested relevant information about the location and account numbers of lawyer or law firm trust accounts.

**(h)   Interest on Funds That Are Not Nominal or Short-Term.**  A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short-term as defined ~~elsewhere~~ in this subchapter ~~shall~~may not receive benefit from _any_ interest on funds held in trust.

**(i)  Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners.**  When ~~an attorney's~~a lawyer's trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, ~~such~~the funds or property ~~shall be so~~must be designated as unidentifiable or held for missing owners.  ~~Diligent~~The lawyer must make a diligent search and inquiry ~~shall then be made by the attorney~~ to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner.  If the beneficial owner of an unidentified accumulation is determined, the funds ~~shall~~must be properly identified as ~~the lawyer's~~ trust property in the lawyer's possession.  If a missing beneficial owner is located, the trust funds or property ~~shall~~must be paid over or delivered to the beneficial owner if the owner is then entitled to receive the ~~same~~funds or property.  Trust funds and property that remain unidentifiable and funds or property that are held for missing owners ~~after being designated as such shall,~~must be disposed of as provided in applicable Florida law after diligent search and inquiry fail to identify the beneficial owner or owner's address~~, be disposed of as provided in applicable Florida law~~.

**(j)  Disbursement against Uncollected Funds.**  A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances.  However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on ~~such~~these deposits without disclosure to and permission of affected clients ~~owning trust account funds subject to possibly being affected~~.  Except for disbursements based ~~up~~on any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds.  For purposes of this provision, "collected funds" means funds deposited, finally settled, and credited to the lawyer's trust account.  ~~Notwithstanding that a deposit made to the lawyer's trust account has not been finally settled and credited to the account, the~~The lawyer may disburse uncollected funds from the trust account in reliance on ~~such~~the deposit when the deposit is made by a:

> (1)  ~~when the deposit is made by~~ certified check or cashier's check;

> (2)  ~~when the deposit is made by a~~ check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender;

(3) ~~when the deposit is made by a~~ bank check, official check, treasurer's check, money order, or other ~~such~~ instrument issued by a bank, savings and loan association, or credit union when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer's trust account within a reasonable period of time;

(4) ~~when the deposit is made by a~~ check drawn on the trust account of a lawyer licensed to practice in the state of Florida or on the escrow or trust account of a real estate broker licensed under applicable Florida law when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer's trust account within a reasonable period of time;

(5) ~~when the deposit is made by a~~ check issued by the United States, the ~~State~~state of Florida, or any agency or political subdivision of the ~~State~~state of Florida;

(6) ~~when the deposit is made by a~~ check or draft issued by an insurance company, title insurance company, or a licensed title insurance agency authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.

A lawyer's disbursement of funds from a trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, ~~such a~~ disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer, ~~up~~on obtaining knowledge of the failure, must immediately act to protect the property of the lawyer's other clients. However, <u>the lawyer will not be guilty of professional misconduct</u> if the lawyer accepting any ~~such~~ check <u>that is later dishonored</u> personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients~~, the lawyer shall not be considered guilty of professional misconduct~~.

**(k) Overdraft Protection Prohibited.** An attorney ~~shall~~must not authorize overdraft protection for any account that contains trust funds.

**COMMENT**

A lawyer must hold property of others with the care required of a professional fiduciary. This chapter requires maintenance of a bank or savings and

loan association account, clearly labeled as a trust account and in which only client or third party trust funds are held.

Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances.

All property that is the property of clients or third persons should be kept separate from the lawyer's business and personal property and, if money, in 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.

A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short term as defined elsewhere in this subchapter should hold the funds in a separate interest-bearing account with the interest accruing to the benefit of the client or third person unless directed otherwise in writing by the client or third person.

Lawyers often receive funds from which the lawyer's fee will be paid. The lawyer is not required to remit to the client funds that the lawyer reasonably believes represent fees owed. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds must be kept in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds ~~shall~~must be promptly distributed.

Third parties, such as a client's creditors, may have lawful claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect ~~such~~these third-party claims against wrongful interference by the client. When the lawyer has a duty under applicable law to protect the third-party claim and the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, and, where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.

The Supreme Court of Florida has held that lawyer trust accounts may be the proper target of garnishment actions. ~~See,~~*See Arnold, Matheny and Eagan, P.A. v. First American Holdings, Inc.*, 982 So. 2d 628 (Fla. 2008). <u>Under certain circumstances lawyers may have a legal duty to protect funds in the lawyer's trust</u>

account that have been assigned to doctors, hospitals or other health care providers directly or designated as Medpay by an insurer. *See The Florida Bar v. Silver*, 788 So. 2d 958 (Fla. 2001); *The Florida Bar v. Krasnove*, 697 So. 2d 1208 (Fla. 1997); *The Florida Bar v. Neely*, 587 So. 2d 465 (Fla. 1991); Florida Ethics Opinion 02-4.

The obligations of a lawyer under this chapter are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction and is not governed by this rule. However, where a lawyer is an escrow agent and represents a party to a transaction involving the escrowed funds, the Supreme Court of Florida has held that lawyers acting as escrow agents have a fiduciary duty to protect the interests of all parties having an interest in escrowed funds whether the funds are in a lawyer's trust account or a separate escrow account. *The Florida Bar v. Golden*, 566 So. 2d 1286 (Fla. 1990); *see also The Florida Bar v. Hines*, 39 So. 3d 1196 (Fla. 2010); *The Florida Bar v. Marrero*, 157 So. 3d 1020 (Fla. 2015).

Each lawyer is required to be familiar with and comply with the Rules Regulating Trust Accounts as adopted by the Supreme Court of Florida.

Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney's fees, and a refusal to account for and deliver over ~~such~~the property ~~up~~on demand ~~shall~~must be a conversion. This does not preclude the retention of money or other property ~~up~~on which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collections.

Advances for fees and costs (funds against which costs and fees are billed) are the property of the client or third party paying same on a client's behalf and are required to be maintained in trust, separate from the lawyer's property. Retainers are not funds against which future services are billed. Retainers are funds paid to guarantee the future availability of the lawyer's legal services and are earned by the lawyer ~~up~~on receipt. Retainers, being funds of the lawyer, may not be placed in the client's trust account.

The test of excessiveness found elsewhere in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers, nonrefundable retainers, and minimum or flat fees.

## RULE 5-1.2   TRUST ACCOUNTING RECORDS AND PROCEDURES

**(a) – (b)      [No Change]**

**(c)   Responsibility of Lawyers for Firm Trust Accounts and Reporting.**

(1)      Every law firm with more than 1 lawyer must have a written plan in place for supervision and compliance with this rule for each of the firm's trust account(s), which plan must be disseminated to each lawyer in the firm. The written plan must include the name(s) of the ~~lawyer(s) who sign trust account checks~~signatories for the law firm's trust accounts, the name(s) of the lawyer(s) who are responsible for reconciliation of the law firm's trust account(s) monthly and annually and the name(s) of the lawyer(s) who are responsible for answering any questions that lawyers in the firm may have about the firm's trust account(s). This written plan must be updated and re-issued to each lawyer in the firm whenever there are material changes to the plan, such as a change in the ~~lawyer(s) signing~~ trust account ~~checks~~signatories and/or lawyer(s) responsible for reconciliation of the firm's trust account(s).

(2)      [No Change]

**(d) – (f)      [No Change]**

**(g)   Audits.**  Any of the following are cause for The Florida Bar to order an audit of a trust account:

(1)      failure to file the trust account certificate required by this rule ~~5-1.2(c)(5)~~;

(2) report of trust account violations or errors to staff counsel under this rule;

(2̶3) return of a trust account check for insufficient funds or for uncollected funds, absent bank error;

(3̶4) filing of a petition for creditor relief on behalf of a lawyer;

(4̶5) filing of felony charges against a lawyer;

(56) adjudication of insanity or incompetence or hospitalization of a lawyer under The Florida Mental Health Act;

(67) filing of a claim against a lawyer with the Clients' Security Fund;

(78) ~~when requested~~request by the chair or vice chair of a grievance committee or the board of governors;

(89) on court order; or

(910) on entry of an order of disbarment, on consent or otherwise.

**(h) – (i)      [No Change]**


**RULE 6-3.7      INACTIVE STATUS**

**(a)   Purpose.**  Inactive status as to board certification under chapter 6, Rules Regulating the Florida Bar, is available to eligible members who apply and qualify under this rule.

**(b)   Applicability.**  Eligible members are:

(1)   *Judicial Officers.*  A board certified member who is appointed or elected as a judicial officer will be permitted to retain board certification in an inactive status if the member files a properly executed application and if the member is determined eligible under this rule.  For purposes of this rule, the term "judicial officer" includes:

(A) members of the United States Constitution Article III federal judiciary;

(B) justices of the Supreme Court of Florida;

(C) judges of the district courts of appeal;

(D) judges of the circuit and county courts;

(E) administrative law judges;

(F) magistrates employed through the court system who are prohibited from practicing law;

(G) masters employed through the court system who are prohibited from practicing law; and

(H) any other judicial officers, as determined by the BLSE who are prohibited from practicing law.

(2) *Law Professors.* A board certified member who does not practice law or ceases to practice law for the purpose of teaching law will be permitted to retain board certification in an inactive status if the member files a properly executed application and is determined eligible under this rule. The member must agree not to practice law if granted inactive status under this rule. For purposes of this rule, the term "teaching" includes only accredited law school and graduate law courses.

(3) *Professional Neutrals.* A board certified member who does not practice law or ceases to practice law for the purpose of being or becoming a mediator, arbitrator or voluntary trial resolution judge will be permitted to retain board certification in an inactive status if the member files a properly executed application and is determined eligible under this rule. The member must agree not to practice law if granted inactive status under this rule.

(4) *Military Personnel.* A board certified member who is called to active duty will be permitted to retain board certification in an inactive status if the member files a properly executed application and is determined eligible under this rule. The member will be exempt from the continuing legal education required for recertification applicable to the member's practice area during the period of active military duty.

(5) *Extended Substantial Hardship Cases.* A board certified member who is not otherwise eligible under this rule, but is unable to practice law because of a unique substantial and material hardship, medical or otherwise, may be permitted to retain board certification in an inactive status if the member files an application that is approved by the BLSE. The BLSE may impose terms and conditions, waive any requirements, or extend the time within which recertification requirements must be met. The BLSE may seek the advice of the relevant area certification committee in determining whether to grant the application, what conditions should be imposed, or what waivers should be granted.

(6) *Not Currently Certified Members.* During the 2 years following the effective date of this policy, any member who voluntarily relinquished board

certification before the effective date of this rule, but who is otherwise eligible for inactive status, may be granted inactive status on approval by the BLSE.

**(c)   Qualifications.**

(1)   *Compliance with Policies.*  A member who is granted board certified inactive status must maintain an active membership with The Florida Bar, obtain continuing legal education credits required for recertification applicable to the member's practice area (unless otherwise exempt under the policies), and otherwise comply with the applicable rules and policies governing board certification.  The member's 5-year recertification cycle will remain intact and the member must report completion of the continuing legal education credits at the end of each 5-year cycle, unless otherwise exempt under the policies.

(2)   *Annual Confirmation of Inactive Status.*  A member who is granted board certified inactive status must confirm continued eligibility on an annual basis on a form approved by the BLSE.

(3)   *Communication.*  While board certified inactive, the member must use the phrase "board certified inactive" and include the practice area as a means by which to distinguish board certification. On reactivation, the member may communicate board certification as otherwise permitted in the Rules Regulating The Florida Bar.

(4)   *Annual Fee.*  A member who is board certified inactive status must pay an annual fee equal to one-half of the fee required of board certified members.

**(d)   Revocation or Relinquishment of Board Certified Inactive Status.**

(1)   *Revocation for Noncompliance.*  The BLSE can revoke board certified inactive status if the member fails to comply with the policies or as provided under policy 2.15. On revocation, the member cannot use the phrase board certified inactive. Unless and until the member is reactivated to board certified status, the member cannot use the phrase board certified, or any other term permitted for use by board certified lawyers in the Rules Regulating The Florida Bar.  If revocation is considered, the same notice and hearing provisions set forth in BLSE policy 2.15(d) apply.

(2)   *Relinquishment.*  A board certified inactive member must notify the BLSE in writing within 90 days if the member no longer qualifies for, or desires to retain, inactive status.  The member must cease to use the phrase board

certified inactive and must immediately apply for reactivation of board certification or relinquish board certification.

## (e)   Reactivation to Board Certified Status and Recertification.

(1)   *Reactivation Requirements.*  If the member no longer qualifies for, or desires to retain, board certified inactive status, the member may apply for reactivation of board certification within 90 days. The member must demonstrate compliance with the continuing legal education requirement for the applicable practice area, unless otherwise exempt under the policies, be a member in good standing with The Florida Bar who is eligible to practice law in Florida, and otherwise comply with the applicable rules and policies governing board certification. On review that the requirements have been satisfied, board certification will be reactivated.

(2)   *Reactivation Fee.*  Members who apply for reactivation of board certification must pay a fee equal to one-half of the fee required to apply for recertification.

(3)   *Recertification after Reactivation.*  On reactivation, the member must apply for recertification by the application filing deadline consistent with the member's 5-year certification cycle. The requirements for recertification may be prorated by the relevant area certification committee if approved by the BLSE.

## SUBCHAPTER 6-31 STANDARDS FOR BOARD CERTIFICATION IN INTERNATIONAL LITIGATION AND ARBITRATION

## RULE 6-31.1     GENERALLY

A lawyer who is a member in good standing of The Florida Bar, eligible to practice law in Florida, and meets the standards prescribed below may be issued a certificate identifying the lawyer as "Board Certified in International Litigation and Arbitration." The purpose of the standards is to identify those lawyers who have the special knowledge, skills, and proficiency, as well as the character, ethics, and reputation for professionalism, to be properly identified to the public as board certified in international litigation and arbitration.

## RULE 6-31.2     DEFINITIONS

**(a)   International Litigation and Arbitration.**  "International litigation and arbitration" is the practice of law dealing with disputes in court or arbitration arising from the relations between or among states and international organizations as well as the relations between or among nationals of different states, or between a state and a national of another state. The term "international litigation and arbitration" includes foreign and comparative law.

**(b)   Practice of Law.**  The "practice of law" for this area is defined as set out in rule 6-3.5(c)(1). Practice of law that otherwise satisfies these requirements but that is on a part-time basis will satisfy the requirement if the balance of the applicant's qualifying activity is spent as a teacher of international litigation and arbitration subjects in an accredited law school.

**(c)   International Litigation and Arbitration Certification Committee.**  The international litigation and arbitration certification committee will consist of 9 members. The international litigation and arbitration committee members will initially be appointed according to the criteria set forth in rule 6-3.2(a).

## RULE 6-31.3      MINIMUM STANDARDS

The applicant must demonstrate the following on a form approved by the committee, which may require additional written or oral supplementation.

**(a)   Minimum Period of Practice.**  The applicant must have engaged in the practice of law, either in the United States or abroad, and must have been a member in good standing and eligible to practice law in their jurisdiction not less than 5 years as of the date of application. The years of law practice need not be consecutive. Receipt of an LL.M degree in international law, as defined in rule 6-21.2(a), or in another field, may be approved by the international litigation and arbitration certification committee to constitute 1 year of the practice of law requirement, but not the 5-year bar membership requirement, specified in this subdivision.

**(b)   Substantial Involvement.**  The applicant must demonstrate substantial involvement in the practice of international litigation and/or arbitration during each of the 3 years immediately preceding the date of application. The applicant must have substantial involvement in contested international litigation and arbitration cases sufficient to demonstrate special competence as an international litigation and arbitration lawyer. Substantial involvement includes active participation in

client interviewing, counseling and investigating, preparation of pleadings and arbitration submissions, participation in discovery, taking of testimony, presentation of evidence, negotiation of settlement, drafting and preparation of settlement agreements, and argument and trial of international cases in court or before an arbitral panel, or service as an arbitrator. For purposes of this section, time devoted to lecturing on or writing about international litigation and arbitration may be included.

    **(c)   Minimum Number of Matters.** The applicant must have had substantial involvement in a minimum of 16 contested international litigation and arbitration matters during the 8-year period immediately preceding application. These matters must have proceeded at least to the filing of a complaint or similar preceding, statement of claim, or demand for arbitration, and involve substantial legal or factual issues. At least 5 of the 16 matters must have been submitted to the trier of fact for resolution of 1 or more contested factual issues through the presentation of live testimony or other evidence at a hearing. The trier of fact includes any judge or jury of a court of general jurisdiction, an arbitration panel, administrative agency, bankruptcy court, or other similar body. "Submission to the trier of fact" requires completion of the case in chief of the plaintiff, petitioner, or claimant, or the actual submission of a motion for summary judgement or the response to that motion. The international litigation and arbitration certification committee may consider involvement in protracted adversary proceedings to satisfy any of these requirements. A "protracted adversary proceeding" is an international litigation and arbitration matter that is so time consuming it precludes the applicant from meeting the requirements of this subdivision.

    In order to demonstrate compliance with the requirements of this section, the following criteria will be applicable:

    (1)    summary judgments may not count for more than 3 of the 5 contested matters submitted to the trier of fact;

    (2)    submission to the trier of fact, other than as to summary judgment, requires completion of the case in chief of the plaintiff, petitioner, or claimant, or the equivalent in arbitration;

    (3)    each preliminary injunction or other evidentiary hearing will count as 1 of the 5 matters submitted to the trier of fact; and

(4)  each matter in which the applicant supervises an associate will qualify the matter as 1 of the 16, but not as 1 of the 5 matters submitted to the trier of fact.

**(d)  Education.**  The applicant must demonstrate that during the 5-year period immediately preceding the date of application, the applicant has completed at least 50 hours of continuing legal education in the field of international litigation and arbitration according to the policies established by the committee or the board of legal specialization and education. This requirement can be met through the following activities to the extent that they are focused on international litigation and arbitration:

(1)  attendance at continuing legal education seminars;

(2)  satisfactory completion of graduate-level law school courses while enrolled in an LL.M program in international law or comparative law;

(3)  satisfactory completion of graduate-level law school courses involving international law aspects while enrolled in a graduate law program;

(4)  lecturing at continuing legal education seminars;

(5)  authoring articles on books or teaching courses at an accredited law school.

**(e)  Peer Review.**  The applicant must submit the names and addresses of 5 lawyers or judges who are neither relatives nor current associates or partners of the applicant to attest to the applicant's substantial involvement, practical experience, and special competence in international litigation and/or arbitration, as well as the applicant's character, ethics, and reputation for professionalism. The international litigation and arbitration certification committee may send reference forms to other lawyers and judges.

**(f)  Examination.**  The applicant must pass an examination administered uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in international litigation and arbitration to justify the representation of special competence to the legal profession and the public.

**(g)  Exemption.**  An applicant who has been substantially involved in international litigation and arbitration for a minimum of 20 years and who otherwise fulfills the standards set forth in rule 6-3.5(d) and this subchapter is exempt from the examination. This exemption is applicable only to those

applicants who apply within the first 2 application filing periods from the effective date of these standards.

## RULE 6-31.4     INTERNATIONAL LITIGATION AND ARBITRATION RECERTIFICATION

During the 5-year period immediately preceding the date of application for recertification, the applicant must satisfy the following requirements for recertification:

**(a)   Substantial Involvement.**   The applicant must demonstrate continuous and substantial involvement in the practice of international litigation and arbitration since the last date of certification or recertification. The demonstration of substantial involvement must be made in accordance with the standards set forth in this subchapter.

**(b)   Matters.**   The applicant must have had substantial involvement in a minimum of 10 contested international litigation and arbitration matters during the 5-year period immediately preceding reapplication. These matters must have proceeded at least to the filing of a complaint or similar pleading, statement of claim, or demand for arbitration, and involve substantial legal or factual issues. At least 3 of the 10 matters must have been submitted to the trier of fact for resolution of 1 or more contested factual issues through the presentation of live testimony or other evidence at a hearing. The trier of fact includes any judge or jury of a court of general jurisdiction, and arbitration panel, administrative agency, bankruptcy court, or other similar body. "Submission to the trier of fact" requires completion of the case in chief of the plaintiff, petitioner, or claimant, or the actual submission of a motion for summary judgement or response to that motion. The international litigation and arbitration certification committee may consider involvement in protracted adversary proceedings to satisfy any of these requirements for good cause shown. A "protracted adversary proceeding" is an international litigation and arbitration matter that is so time consuming it precludes the applicant from meeting the requirements of this subdivision.

The applicant must demonstrate compliance on a form approved by the committee using the following criteria:

(1) summary judgments may not count as more than 1 of the 3 matters submitted to the trier of fact;

(2) submission to the trier of fact, other than as to summary judgment, requires completion of the case in chief of the plaintiff, petitioner, or claimant, or the equivalent in arbitration;

(3) each preliminary injunction or other evidentiary hearing will count as 1 of the 3 matters submitted to the trier of fact; and

(4) each matter in which the applicant supervises an associate will qualify as 1 of the 10, but not as 1 of the 3, matters submitted to the trier of fact.

**(c) Education.** The applicant must show completion of at least 50 hours of approved continuing legal education in international litigation and arbitration since the filing of the last application for certification as provided in this subchapter.

**(d) Peer Review.** The applicant must submit the names and addresses of 5 other lawyers or judges who are familiar with the applicant's practice, excluding individuals who currently are employed by the same employer as the applicant, and who can attest to the applicant's special competence and substantial involvement in international litigation and arbitration, as well as the applicant's character, ethics, and reputation for professionalism. The international litigation and arbitration certification committee may send reference forms to other lawyers and judges.


**RULE 10-2.1     GENERALLY**

Whenever used in these rules the following words or terms shall have the following meaning herein set forth unless the use thereof shall clearly indicateof the word or term clearly indicates a different meaning:

**(a) Unlicensed Practice of Law.** The unlicensed practice of law shall meanmeans the practice of law, as prohibited by statute, court rule, and case law of the state of Florida.

**(b) Paralegal or Legal Assistant.** A paralegal or legal assistant is a person qualified by education, training, or work experience, who works under the supervision of a member of The Florida Bar, an out-of-state lawyer engaged in the authorized practice of law in Florida or a foreign lawyer engaged in the authorized practice of law in Florida and who performs specifically delegated substantive legal work for which a member of The Florida Barthe supervising lawyer is responsible. A nonlawyer or a group of nonlawyers may not offer legal services

directly to the public by employing a lawyer to provide the lawyer supervision required under this rule.  It ~~shall constitute~~constitutes the unlicensed practice of law for a person who does not meet the definition of paralegal or legal assistant to use the title paralegal, legal assistant, or other similar term in offering to provide or in providing services directly to the public.

(c) **Nonlawyer or Nonattorney.**  For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar.  This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and lawyers who have resigned from The Florida Bar.  A suspended lawyer, while a member of The Florida Bar during the period of suspension as provided elsewhere in these rules, does not have the privilege of practicing law in Florida during the period of suspension.  For purposes of this chapter, it ~~shall constitute~~constitutes the unlicensed practice of law for a lawyer admitted in a jurisdiction other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide.

(d) **This Court or the Court.**  This court or the court ~~shall mean~~means the Supreme Court of Florida.

(e) **Bar Counsel.**  Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules and includes UPL counsel and UPL staff counsel.

(f) – (*l*)  **[No Change]**

(m) **Designated Reviewer.**  The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter.  If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter.  The designated reviewer will be selected~~, from time to time,~~ by the board members from the circuit of ~~such~~that circuit committee.  If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned~~, from time to time,~~ to equalize workloads.  On ~~such~~ reassignments, responsibility for all pending cases from a particular committee passes to the new designated reviewer.  UPL ~~staff~~ counsel will be given written notice of changes in the designated reviewing members for a particular committee.

**(n)  Executive Committee.**  The executive committee is the executive committee of the Board of Governors of The Florida Bar.  All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may ~~from time to time~~ be authorized by standing policies of the board of governors.

## RULE 10-3.2  DUTIES OF THE STANDING COMMITTEE

It ~~shall be~~is the duty of the standing committee to receive and evaluate circuit committee reports and to determine whether litigation should be instituted in the court against any alleged offender.  The standing committee may approve civil injunctive proceedings, indirect criminal contempt proceedings, or a combination of both, or ~~such~~ other action as ~~may be~~ appropriate.  In addition, the duties of the standing committee ~~shall~~ include, but are not ~~be~~ limited to:

**(a)**  [No Change]

**(b)**  ~~the~~ supervision of the circuit committees, which ~~shall include~~includes, but is not ~~be~~ limited to:

(1) – (4)  [No Change]

(5)  exercising final authority to accept a cease and desist affidavit in cases proposed to be resolved by cease and desist affidavit where UPL counsel or bar counsel objects to the acceptance of a cease and desist affidavit; ~~and~~

(6)  [No Change]

(7)  exercising final authority to accept a cease and desist affidavit with restitution to the complainant(s) in cases proposed by the circuit committee to be resolved by a cease and desist affidavit that includes restitution;

(~~7~~8)  joining with a circuit committee in a particular investigation;

(~~8~~9)  assigning staff investigators and bar counsel to conduct investigations on behalf of or in concert with the circuit committees; and

(~~9~~10)  suspending circuit committee members and chairs for cause and appointing a temporary circuit committee chair where there has been a suspension, resignation, or removal, pending the appointment of a permanent chair by the board of governors;

**(c)**  ~~the~~ initiation and supervision of litigation, including ~~the~~ delegation of responsibility to bar counsel to prosecute ~~such~~the litigation;

**(d)**  ~~the~~ giving of advice regarding the unlicensed practice of law policy to the officers, board of governors, staff, sections, or committees of The Florida Bar as requested; and

**(e)**  **[No Change]**


## RULE 10-4.1    GENERALLY

**(a)  Appointment and Terms.**  Each circuit committee ~~shall~~will be appointed by the court on advice of the board of governors and ~~shall~~will consist of not fewer than 3 members, at least one-third of whom ~~shall~~will be nonlawyers.  All appointees ~~shall~~must be residents of the circuit or have their principal office in the circuit.  The terms of the members of circuit committees ~~shall be for~~are 3 years from the date of appointment by the court or until ~~such time as~~ their successors are appointed and qualified.  Continuous service of a member ~~shall~~may not exceed 2 consecutive 3-year terms.  A member ~~shall~~may not be reappointed for a period of 1 year after the end of the member's second term provided, however, the expiration of the term of any member ~~shall~~will not disqualify that member from concluding any investigations pending before that member.  Any member of a circuit committee may be removed from office by the board of governors.

**(b)  Committee Chair.**  ~~For e~~Each circuit committee ~~there shall be~~will have a chair designated by the designated reviewer of that committee.  A vice-chair and secretary may be designated by the chair of each circuit committee.  The chair ~~shall~~must be a member of The Florida Bar.

**(c)  Quorum.**  Three members of the circuit committee or a majority of the members, whichever is less, ~~shall~~ constitute a quorum.

**(d)  Panels.**  The circuit committee may be divided into panels of not fewer than 3 members, 1 of whom must be a nonlawyer.  Division of the circuit committee into panels ~~shall~~will only be ~~up~~on concurrence of the designated reviewer and the chair of the circuit committee.  The 3-member panel ~~shall~~will elect 1 of its members to preside over the panel's actions.  If the chair or vice-chair of the circuit committee is a member of a 3-member panel, the chair or vice-chair ~~shall~~must be the presiding officer.

**(e) Duties.** It ~~shall be~~is the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt report of its investigation and findings to bar counsel. In addition, the duties of the circuit committee ~~shall~~ include, but are not ~~be~~ limited to:

(1) [No Change]

(2) exercising final authority to close a case with the acceptance of a letter of advice except those cases to which UPL staff counsel objects to the closing of the case with a letter of advice;

(~~2~~3) exercising final authority to close cases proposed to be resolved by cease and desist affidavit except those cases to which UPL staff counsel objects to the acceptance of a cease and desist affidavit;

(~~3~~4) forwarding to bar counsel for review by the standing committee recommendations for closing cases by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident; ~~and~~

(5) forwarding to bar counsel for review by the standing committee recommendations for closing cases by a cease and desist affidavit that includes restitution to the complainant(s); and

(~~4~~)(6) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.

**(f) [No Change]**

**(g) Recusal.** ~~No~~A member of a circuit committee ~~shall~~may not perform any circuit committee function when that member:

(1) – (4) [No Change]

~~Upon~~On notice of any of the above prohibitions the affected members should recuse themselves from further proceedings. The circuit committee chair ~~shall have~~has the power to disqualify any member from any proceeding in which any of the above prohibitions exists and is stated of record or in writing in the file by the chair.

**RULE 10-5.2      DISQUALIFICATION AS ~~ATTORNEY~~LAWYER FOR RESPONDENT DUE TO CONFLICT**

~~(a)  Members of the Standing Committee on UPL (Standing Committee), Members of the Circuit UPL Committees (Circuit Committees), Members of the Board of Governors, and Employees of The Florida Bar.  No member of the standing committee, member of a circuit committee, member of the Board of Governors of The Florida Bar, or employee of The Florida Bar shall represent a party other than The Florida Bar in UPL proceedings authorized under these rules.~~

~~(b) Former Members of the Standing Committee, Former Members of the Circuit Committees,  Former Board Members,  and Former Employees.  No former member of  the standing committee, former member of a circuit committee, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in UPL proceedings authorized under these rules if personally involved to any degree in the matter while a member of the standing committee, circuit committee, board of governors, or while an employee of The Florida Bar.~~

~~A former member of the standing committee, former member of a circuit committee, former member of the board of governors, or former employee of The Florida Bar who did not participate personally in any way in the matter or in any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such matter,  shall not represent any party except The Florida Bar for 1 year after such service without the express consent of the board.~~

~~(c)  Partners, Associates, Employers, or Employees of the Firms of Standing Committee Members, Circuit Committee Members, or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.  Members of the firms of board of governors members, standing committeee members, or circuit committee members shall not represent any party other than The Florida Bar in UPL proceedings authorized under these rules without the express consent of the board.~~

~~(d)  Partners, Associates, Employers, or Employees of the Firms of Former Standing Committee Members, Former Circuit Committee Members, or Former Board of Governors Members Precluded From Representing~~

- 64 -

**Parties Other Than The Florida Bar.** ~~Attorneys in the firms of former board of governors members, former standing committee members, or former circuit committee members shall not represent any party other than The Florida Bar in UPL proceedings authorized under these rules for 1 year after the former member's service without the express consent of the board.~~

(a)   **Representation Prohibited.**  Lawyers may not represent a party other than The Florida Bar in unlicensed practice of law proceedings authorized by these rules if they are:

(1)   currently serving on the standing committee, a circuit committee, or the board;

(2)   employees of The Florida Bar; or

(3)   former members of the standing committee, a circuit committee, the board and former employees of The Florida Bar if personally involved to any degree in the matter while a member of the standing committee, a circuit committee, the board or while an employee of The Florida Bar.

(b)   **Representation Permitted With Consent by the Board of Governors.**  Lawyers may represent a party other than The Florida Bar in unlicensed practice of law proceedings authorized by these rules only after receiving consent from the executive director or board of governors if they are:

(1)   former members of the standing committee, a circuit committee, the board, or former employees of The Florida Bar who did not participate personally in any way in the matter or in any related matter in which the lawyer seeks to be a representative, and who did not serve in a supervisory capacity over the matter within 1 year of the service or employment;

(2)   a partner, associate, employer or employee of a member of the standing committee, a circuit committee or the board; or

(3)   a partner, associate, employer or employee of a former member of the standing committee, a circuit committee or the board within 1 year of the former member's service on the committee or board.

**RULE 10-6.3     RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS**

(a)  **Circuit Committee Action.**  ~~Upon~~On concluding its investigation, the circuit committee ~~shall~~will report to bar counsel regarding the disposition of those cases closed, <u>those cases where a letter of advice has been given,</u> those cases where a cease and desist affidavit has been accepted, those cases where a cease and desist affidavit with monetary penalty has been recommended, and those cases where litigation is recommended.  A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail or telephone rather than at a formal meeting.  All recommendations for a cease and desist affidavit with monetary penalty ~~shall~~must be reviewed by the standing committee for final approval.  All recommendations for litigation under these rules ~~shall~~must be reviewed by the standing committee and a designated reviewer for final approval prior to initiating litigation.

(b)  **~~Action by~~ Bar Counsel <u>Objection to Action of Circuit Committee</u>.** ~~Bar counsel shall review the disposition reports of the circuit committee.~~  If bar counsel objects to any action taken by the circuit committee, ~~bar counsel shall forward such objection to the circuit committee within 10 days of receipt of the circuit committee report.  Bar counsel shall place the action and objection~~ <u>the action and objection will be placed</u> before the standing committee for review at its next scheduled meeting <u>for a</u>~~.  The standing committee shall review the circuit committee action and the objection, and shall~~ vote on the final disposition of the case.  ~~Once a case is closed or a cease and desist affidavit is accepted by the circuit committee or by the standing committee, bar counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint~~<u>Bar counsel will inform the complainant of the complaint's disposition.  Bar counsel will notify a respondent of the complaint's disposition if the bar has contacted the respondent about the complaint</u>.

(c)  **Review by Designated Reviewer.**  ~~A designated reviewer shall review~~<u>All</u> recommendations by the standing committee that litigation be initiated <u>must be reviewed by a designated reviewer</u>.  ~~The~~<u>If the</u> designated reviewer ~~shall~~<u>does not</u> act on the recommendation within 21 days following the mailing date of the notice of standing committee action, ~~otherwise~~ the standing committee action ~~shall~~will become final.  If the designated reviewer disagrees with all or any part of the recommendation for litigation, the designated reviewer ~~shall~~will make a report and recommendation to the board of governors and the board will make a final determination regarding the litigation.

**RULE 10-9.1     PROCEDURES FOR ISSUANCE OF ADVISORY OPINIONS ON THE UNLICENSED PRACTICE OF LAW**

**(a) Definitions.**

(1) *Committee.* The committee is the standing committee on UPL as constituted according to the directives contained in these rules.

(2) *Petitioner.* An petitioner is an individual or organization seeking guidance as to the applicability, in a hypothetical situation, of the state's prohibitions against the unlicensed practice of law.

(3) *Public Notice.* PublicationPublic notice is publication in a newspaper of general circulation in the county in which the hearing will be held and in The Florida Bar NewsNews.

(4) *Court.* The court is the Supreme Court of Florida (or suchany other court in the state of Florida as the supreme court may designate).

**(b) Requests for Advisory Opinions.** A petitioner requesting a formal advisory opinion concerning activities that may constitute the unlicensed practice of law shall do so by sending the request in writing addressed to The UPL Department, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300. The request for an advisory opinion shall state in detail to the extent practicable the operative facts upon which the request for opinion is based and contain the name and address of the petitioner.A petitioner may request a formal advisory opinion concerning activity that may constitute the unlicensed practice of law by sending a question to The Florida Bar's UPL Department at the bar's headquarters address in Tallahassee. The question must be in writing, state all operative facts and ask whether the activity constitutes the unlicensed practice of law. The request shallwill be reviewed by UPL staff counsel. If the request complies with the requirements of thethis rule as stated herein, the request will be placed on the agenda for the next scheduled meeting of the committee. At that meeting, the committee will determine whether to accept the request, such determination beingwhich is within the discretion of the committee. ShouldIf the committee accepts the request, a public hearing as provided in rule 10-9.1(f) shallelsewhere in this rule will be scheduled.

**(c) Limitations on Advisory Opinions.** No advisory opinion shallmay be rendered with respect to any case or controversy pending in any court or tribunal in

this jurisdiction or any matter currently the subject of an unlicensed practice of law or grievance investigation by The Florida Bar~~and no informal opinion shall be issued except as provided in rule 10-9.1(g)(1)~~. However, the committee ~~shall~~will hold a public hearing and issue a proposed formal advisory opinion under circumstances described by the court in *~~Harold~~ Goldberg v. Merrill Lynch Credit ~~Corporation~~ Corp.*, 35 So. 3d 905 (Fla. 2010), when the petitioner is a party to a lawsuit and that suit has been stayed or dismissed without prejudice. No informal advisory opinion will be issued except as provided elsewhere in these rules.

**(d) Services of Voluntary Counsel.** The committee ~~shall be empowered to~~may request and accept the voluntary services of a person licensed to practice in this state when the committee deems it advisable to receive written or oral advice regarding the question presented by the petitioner.

**(e) Conflict of Interest.** Committee members ~~shall~~will not participate in any matter in which they have either a material pecuniary interest that would be affected by ~~a proposed~~an advisory opinion or committee recommendation or any other conflict of interest that should prevent them from participating. However, no action of the committee will be invalid where full disclosure has been made and the committee has not decided that the member's participation was improper.

**(f) Notice, Appearance, and Service.**

(1) At least 30 days in advance of the committee meeting at which a hearing is to be held with respect to a potential advisory opinion, the committee ~~shall~~must give public notice of the date, time, and place of the hearing, provide a general description of the subject matter of the request and the bar website and address where a full copy of the question presented can be obtained, and invite written comments on the question. On the announced date the committee ~~shall~~will hold a public hearing at which any person ~~affected shall be entitled to~~may present oral testimony and be represented by counsel. ~~Oral testimony by other persons may be allowed by the committee at its discretion.~~ At the time of or prior to the hearing any ~~other~~ person ~~shall be entitled to~~may file written testimony on the issue before the committee. Additional procedures not inconsistent with this rule may be adopted by the committee.

(2) ~~The committee shall~~After the hearing the committee will vote whether to issue either a written proposed advisory opinion, a letter that declines to issue an opinion, or an informal opinion as provided ~~in rule 10-9.1(g)(1)~~elsewhere in this rule. No other form of communication ~~shall be~~is deemed to be an advisory opinion.

(3)  A proposed advisory opinion ~~shall~~must be in writing and ~~shall~~ bear a date of issuance.  The ~~proposed opinion shall prominently bear a title indicating~~cover page of the advisory opinion will state that it is a proposed advisory opinion~~,~~ ~~and a disclaimer stating that it~~ is only an interpretation of the law and does not constitute final court action.  The committee ~~shall~~will arrange for the publication of notice of filing the proposed advisory opinion ~~and~~with a summary ~~thereof~~ in The Florida Bar ~~News~~*News* within a reasonable time.  Interested parties ~~shall~~will be furnished a copy of the full opinion ~~up~~on request.

**(g)  Service and Judicial Review of Proposed Advisory Opinions.**

(1)  In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question is not the unlicensed practice of law, it ~~shall~~will decide, by a vote of a majority of the committee members present, either to publish the advisory opinion as provided ~~in rule 10-9.1(f)(3)~~elsewhere in this rule as an informal advisory opinion, or to file a copy of the opinion with the court ~~as provided in rule 10-9.1(g)(2)~~.

(2)  In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question constitutes or would constitute the unlicensed practice of law, the committee ~~shall~~must file a copy of the opinion and all materials considered by the committee in adopting the opinion with the clerk of the court.  The proposed advisory opinion~~, together with~~and the notice of the filing ~~thereof, shall~~will be furnished ~~by certified mail~~ to the petitioner.

(3)  Within 30 days of the filing of the proposed advisory opinion, the petitioner and any other interested party may file ~~objections and~~ a brief or memorandum ~~in support thereof, copies of which shall be served~~in response to the proposed advisory opinion, copies of which must be served on the committee at the Florida Bar's headquarters address in Tallahassee.  ~~Any other interested person may, within 30 days of the filing of the opinion, seek leave of the court to file and serve a brief, whether in support of or in opposition to the opinion, in accordance with this same procedure.~~  The committee may file a responsive brief or memorandum within 20 days of service of the initial brief or memorandum.  The petitioner, ~~as well as~~and other interested persons ~~having leave of court~~, may file a reply brief or memorandum within 10 days of service of the responsive brief or memorandum.  ~~At its discretion, the court shall~~The court may permit reasonable extension of these time periods.  Oral argument will be allowed at the court's discretion.  ~~The~~Filing, service and oral argument will be governed by the Florida Rules of Appellate Procedure ~~shall otherwise govern the above methods of filing, service, and argument~~.

- 69 -

(4) ~~Upon the expiration of the time to file objections, briefs, and replies thereto, the court shall review the advisory opinion, regardless of whether any such objections are in fact made, together with any briefs or objections filed in support of or in opposition to such opinion.  Upon review, it shall~~ The court will review all filings after which the court will approve, modify, or disapprove the proposed advisory opinion~~, and the ensuing~~ .  The court's opinion ~~shall~~will have the force and effect of an order of the court and be published accordingly.  There ~~shall~~will be no further review of the opinion except as granted by the court in its discretion, ~~up~~on petition to the court.


## CHAPTER 12  EMERITUS ~~ATTORNEYS~~LAWYERS PRO BONO PARTICIPATION PROGRAM
## SUBCHAPTER 12-1    GENERALLY
## RULE 12-1.1    PURPOSE

Individuals admitted to the practice of law in Florida have a responsibility to provide competent legal services for all persons, including those unable to pay for ~~such~~these services.  ~~As one means of meeting these legal needs, the following rules establishing the~~The emeritus ~~attorneys~~lawyers pro bono participation program ~~are adopted~~is one means of meeting these legal needs.


## RULE 12-1.2    DEFINITIONS

**(a)  Emeritus ~~Attorney~~Lawyer.**  An "emeritus ~~attorney~~lawyer" is any person~~,~~ who meets the following eligibility and requirements.

(1)  *Eligibility.*  An emeritus lawyer must be a person who:

(A) is a member of The Florida Bar who is inactive or retired from the active practice of law in Florida;

(B) is an inactive or retired member of the bar of ~~or~~ any other state or territory of the United States or the District of Columbia~~, or is an authorized house counsel certified by the Supreme Court of Florida and who:~~;

(C) has served as a judge in Florida or any other state or territory of the United States or the District of Columbia;

(D) is or was a full-time law professor employed by a law school accredited by the American Bar Association; or

(E) is an authorized house counsel certified by the Supreme Court of Florida under chapter 17 of these rules.

(2) *Requirements.* All emeritus lawyers must meet the following requirements:

(A) not be currently engaged in the practice of law in Florida or elsewhere except for authorized house counsel certified by the Supreme Court of Florida under chapter 17 of these rules;

(1B) ~~was~~have been engaged in the active practice of law for a minimum of 10 out of the 15 years immediately preceding the application to participate in the emeritus program, except ~~that this requirement does not apply to~~for authorized house counsel certified by the Supreme Court of Florida under chapter 17 of these rules;

(2C) ~~was~~have been a member in good standing of The Florida Bar or the entity governing the practice of law of any other state, territory, or the District of Columbia and ~~has~~have not been disciplined for professional misconduct by the bar or courts of any jurisdiction within the past 15 years;

(3D) ~~if not a retired member of The Florida Bar, has~~have not failed the Florida bar examination 3 or more times except for an inactive or retired member of The Florida Bar;

(4E) agree~~s~~ to abide by the Rules of Professional Conduct and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes;

(5F) neither ask~~s~~ for nor receive~~s~~ compensation of any kind for the legal services to be rendered under this rule; and

(6G) ~~is~~be certified under rule 12-1.5.

**(b) Approved Legal Aid Organization.** An "approved legal aid organization" for the purposes of this chapter is a not-for-profit legal aid organization that is approved by the Supreme Court of Florida. A legal aid organization seeking approval must file a petition with the clerk of the Supreme

Court of Florida certifying that it is a not-for-profit organization and reciting with specificity:

(1) – (5)   [No Change]

(6)  the existence and extent of malpractice insurance that will cover the emeritus ~~attorney~~lawyer.

**(c)  Supervising ~~Attorney~~Lawyer.**  A "supervising ~~attorney~~lawyer" as used in this chapter is a member in good standing of The Florida Bar who ~~directs and~~ supervises an emeritus ~~attorney~~lawyer engaged in activities permitted by this chapter.  The supervising ~~attorney~~lawyer must:

(1)  [No Change]

(2)  assume ~~personal professional~~ responsibility consistent with the requirements of rule 4-5.1 of the Rules Regulating The Florida Bar for supervising the conduct of the matter, litigation, or administrative proceeding in which the emeritus ~~attorney~~lawyer participates.

**(d)  Inactive.**  "Inactive" as used in this chapter refers to a lawyer who voluntarily elects to be placed on inactive status and was not placed on inactive status due to incapacity or discipline, or who is ineligible to practice law for failure to pay bar fees or complete continuing legal education requirements.

**(e)  Active Practice of Law.**  The "active practice of law" as used in this chapter includes, but is not limited to, private practice, working as an authorized house counsel, public employment including service as a judge, and full time employment as a law professor at or by an American Bar Association-accredited law school.

**RULE 12-1.3      ACTIVITIES**

**(a)  Permissible Activities.**  An emeritus ~~attorney~~lawyer, in association with an approved legal aid organization and under the supervision of a supervising ~~attorney~~lawyer, may perform the following activities:

(1)  The emeritus ~~attorney~~lawyer may appear and proceed in any court or before any administrative tribunal in this state on behalf of a client of an approved legal aid organization if the person on whose behalf the emeritus

attorneylawyer is appearing has consented in writing to that appearance and representation and a supervising attorneylawyer has given written approval for that appearance.  The written consent and approval must be filed in the record of each case and brought to the attention of a judge of the court or the presiding officer of the administrative tribunal.

(2)  The emeritus attorneylawyer may prepare, sign, and file pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the emeritus attorneylawyer is involved.  The supervising lawyer's name and Florida Bar number must be included on each pleading or paper filed or served by an emeritus lawyer, who must also be identified as a certified emeritus lawyer on each pleading or paper must sign all documents filed with the court.  The supervising lawyer is not required to sign each pleading or paper filed or served by an emeritus lawyer.

(3)  The emeritus attorneylawyer may engage in such other preparatory activities as are necessary for any matter in which the emeritus attorneylawyer is involved, including participating in legal clinics sponsored or provided by the emeritus lawyer's legal aid organization, and providing advice and assistance to, and drafting legal documents for, persons whose legal problems or issues are not in litigation.

**(b)  Determination of Nature of Participation.**  The presiding judge or hearing officer may, in the judge's or officer's discretion, determine the extent of the emeritus attorney'slawyer's participation in any proceedings before the court.

## COMMENT

This rule recognizes that an emeritus lawyer may accept an appointment or assignment from a state or federal judge seeking pro bono assistance for litigants or persons appearing before the judge through a supervising legal aid organization, including but not limited to: direct representation; limited representation; or service as either an attorney ad litem or guardian ad litem.  However, this rule applies to civil legal assistance and recognizes that emeritus lawyers under this rule may not provide representation and/or legal services in criminal law matters.

**RULE 12-1.4      SUPERVISION AND LIMITATIONS**

**(a) Supervision by ~~Attorney~~Lawyer.**  An emeritus ~~attorney~~lawyer must perform all activities authorized by this chapter under the direct supervision of a supervising ~~attorney~~lawyer.

**(b) Representation of Bar Membership Status.**  Emeritus ~~attorneys~~lawyers permitted to perform services are not, and must not represent themselves to be, active members of The Florida Bar licensed to practice law in this state.

**(c) Payment of Expenses and Award of Fees.**  No emeritus lawyer may receive compensation for legal services rendered under the authority of this rule from any source, including but not limited to the legal aid organization with which the lawyer is associated, the emeritus lawyer's client, or a contingent fee agreement.  The prohibition against compensation for the emeritus ~~attorney~~lawyer contained in ~~rule 12-1.2(a)(5)~~this chapter will not prevent the approved legal aid organization from reimbursing the emeritus ~~attorney~~lawyer for actual expenses incurred while rendering approved services.  It also does not prevent the approved legal aid organization from charging for its services as it may properly charge.  The approved legal aid organization will be entitled to receive all court-awarded attorneys' fees that may be awarded for any representation or services rendered by the emeritus ~~attorney~~lawyer.

## RULE 12-1.5     CERTIFICATION

An emeritus ~~attorney~~lawyer seeking to provide pro bono legal services must obtain approval from the ~~Clerk~~clerk of the Supreme Court of Florida by filing all of the following certificates:

**(a)**   a certificate from an approved legal aid organization stating that the emeritus ~~attorney~~lawyer is currently associated with that legal aid organization and that a Florida Bar member employed by or participating as a volunteer with that organization will assume the required duties of the supervising lawyer;

**(b)**   a certificate from the highest court or agency in any state, territory, or district in which the emeritus ~~attorney~~lawyer has been licensed to practice law, certifying that the emeritus ~~attorney~~lawyer has ~~fulfilled the requirements of active bar membership and has~~not been disciplined for professional misconduct by the bar or courts of that jurisdiction within the past 15 years~~. An~~, except that an

authorized house counsel certified by the Supreme Court of Florida under chapter 17 of these rules need not provide this certificate; and

**(c)** a sworn statement by the emeritus ~~attorney~~lawyer that the emeritus ~~attorney~~lawyer:

(1) has read and will abide by the Rules of Professional ~~conduct~~Conduct as adopted by the Supreme Court of Florida;

(2) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes as ~~defined by~~provided in chapter 3~~, Rules of Discipline,~~ of these rules and ~~by rules 12-1.2(a)(4) and 12-1.7, R. Regulating Fla. Bar~~elsewhere in this chapter; and

(3) [No Change]

**RULE 12-1.6      WITHDRAWAL OF CERTIFICATION**

**(a)  Withdrawal of Permission to Perform Services.**

(1)  The emeritus ~~attorney~~lawyer must immediately cease performing legal services if~~:~~ ~~(1)~~ the emeritus lawyer ceases to be associated with the approved legal aid organization.  The approved legal aid organization must file~~s~~ a statement with the ~~Clerk~~clerk of the Supreme Court of Florida within 5 days after the ~~that:~~ ~~(A)  the emeritus attorney has ceased to be associated with the organization.  This notice must be filed within 5 days after such~~ association has ceased.~~; or~~  The legal aid organization must mail a copy of the notice filed with the clerk of the Supreme Court of Florida to the emeritus lawyer.

(2)~~(B)~~  The emeritus lawyer must immediately cease performing legal services if the approved legal aid organization withdraws certification of ~~such attorney~~the emeritus lawyer ~~is withdrawn.  An approved legal aid organization may withdraw certification~~, which may be at any time and ~~it is not necessary that the notice state~~without stating the cause for ~~such~~the withdrawal.  The approved legal aid organization must file a statement with the clerk of the Supreme Court of Florida within 5 days after withdrawing the certification.  The legal aid organization must mail a copy of the notice filed with the clerk of the Supreme Court of Florida to the emeritus ~~attorney concerned; or~~lawyer.

(23) theThe emeritus lawyer must immediately cease performing legal services if the Supreme Court of Florida revokes permission for the emeritus lawyer to provide pro bono services, which is at the court's ~~Supreme Court of Florida, in its~~ discretion~~, at any time, revokes permission for the emeritus attorney to perform pro bono services~~.  The ~~Clerk~~clerk of the Supreme Court of Florida must mail a copy of the statement to the emeritus ~~attorney~~lawyer and the approved legal aid organization.

(34) The emeritus lawyer must immediately cease performing legal services if the Supreme Court of Florida terminates the emeritus lawyer as an authorized house counsel.  The Florida Bar must file~~s~~ a statement with the Supreme Court of Florida that the individual is no longer an authorized house counsel.  The Florida Bar must mail a copy of the statement to the emeritus ~~attorney~~lawyer involved.

**(b) Notice of Withdrawal.**  If an emeritus ~~attorney's~~lawyer's certification is withdrawn for any reason, the supervising ~~attorney~~lawyer must immediately file a notice of the withdrawal in the official file of each matter pending before any court or tribunal in which the emeritus ~~attorney~~lawyer was involved.

## RULE 12-1.7     DISCIPLINE

The Supreme Court of Florida may impose appropriate proceedings and discipline under the Rules of Discipline or the Rules of Professional Conduct. In addition, the Supreme Court of Florida or the approved legal aid organization may, with or without cause, withdraw certification.  ~~and the~~The presiding judge or hearing officer ~~for any matter in which the emeritus attorney has participated~~ may hold the emeritus ~~attorney~~lawyer in civil contempt for any failure to abide by the tribunal's orders for any matter in which the emeritus lawyer has participated.

## RULE 15-2.1     MEMBERSHIP AND TERMS

The total number of standing committee on advertising members is determined at the discretion of the board of governors of a number of no more than 20, 3-5 of which are ~~shall consist of 4 members of The Florida Bar and 3~~ nonlawyers representing the public.  Members of the committee ~~shall be~~are appointed by the president-elect of The Florida Bar, as provided in rule 2-8.1.  The

president-elect ~~shall~~ designates the chair and vice-chair, with the advice and consent of the board of governors.  Members of the committee ~~shall~~ serve staggered 3-year terms <u>unless removed by the president or president-elect for non-attendance or other good cause</u>.  No member may serve more than 2 consecutive terms.  A quorum ~~shall~~ consists of a majority of the members.


**RULE 16-1.2**      ~~**DEFINITIONS**~~<u>**GENERAL CERTIFICATION REGULATIONS**</u>

~~A foreign legal consultant is any person who:~~<u>The Supreme Court of Florida may certify to practice as a foreign legal consultant an applicant who:</u>

**(a)** ~~has been admitted to practice in a foreign country as an attorney, counselor at law, or the equivalent for a period of not less than 5 of the 7 years immediately preceding the application for certification under this chapter~~<u>is a member in good standing of a recognized legal profession in a foreign country, the members of which are admitted to the practice as lawyers or counselors at law or the equivalent and are subject to effective regulation and discipline by a duly constituted professional body or public authority</u>;

**(b)** has engaged in the practice of law of ~~such~~<u>a</u> foreign country for a period of not less than ~~5~~<u>3</u> of the ~~7~~<u>5</u> years immediately preceding the application for certification under this chapter and has remained in good standing as ~~an attorney~~<u>a lawyer</u>, counselor at law, or the equivalent throughout ~~said~~<u>that</u> period;

~~**(c)**  is admitted to practice in a foreign country whose professional disciplinary system for attorneys is generally consistent with that of The Florida Bar;~~

**(<u>d</u>~~c~~)** has not been disciplined for professional misconduct by the bar or courts of any jurisdiction within ~~10~~<u>7</u> years immediately preceding the application for certification under this chapter and is not the subject of any ~~such~~ disciplinary proceeding or investigation pending at the date of application for certification under this chapter;

**(<u>e</u>~~d~~)** has not been denied admission to practice before the courts of any jurisdiction based ~~up~~on character or fitness during the ~~15-year~~<u>10-year</u> period preceding application for certification under this chapter;<u> and</u>

**(f)** has submitted, pursuant to requirements determined by the Supreme Court of Florida, an application for certification under this chapter and the appropriate fees;

**(g)** agrees to abide by the applicable Rules Regulating The Florida Bar and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes;

**(h)** is over 26 years of age;

**(ie)** maintains an office in the state of Florida for the rendering of services as a foreign legal consultant; and.

**(j)** has satisfied, in all respects, the provisions of rule 16-1.4.

## RULE 16-1.3     ACTIVITIES

**(a) Rendering Legal Advice.**  A person certified as a foreign legal consultant under this chapter may renderprovide legal services in the state of Florida; provided, however, that such only when these services shall:

(1) beare limited to those regarding the laws of the foreign country in which suchthat person is admitted to practice as an attorneya lawyer, counselor at law, or the equivalent;

(2) do not include any activity or any service constituting the practice of the laws of the United States, the state of Florida, or any other state, commonwealth, or territory of the United States or the District of Columbia including, but not limited to, the restrictions that suchthe person shallwill not:

(A) appear for another person as attorneya lawyer in any court or before any magistrate or other judicial officer or before any federal, state, county, or municipal governmental agency, quasi-judicial, or quasi-governmental authority in the state of Florida, or prepare pleadings or any other papers in any action or proceedings brought in any suchof these courts, or before any suchof these judicial officers, except as authorized in any rule of procedure relating to admission pro hac vice, or pursuant to administrative rule;

(B) prepare any deed, mortgage, assignment, discharge, lease, agreement of sale, or any other instrument affecting title to real property located in

the United States, or personal property located in the United States, except where the instrument affecting title to such property is governed by the law of a jurisdiction in which the foreign legal consultant is admitted to practice as ~~an attorney~~a lawyer, counselor at law, or the equivalent;

(C)  prepare any will or trust instrument affecting the disposition of any property located in the United States and owned by a United States resident ~~thereof~~ nor prepare any instrument relating to the administration of a decedent's estate in the United States;

(D)  prepare any instrument ~~with respect to~~regarding the marital relations, rights, or duties of a resident of the United States or the custody or care of the children of ~~such~~ a United States resident;

(E)  ~~render professional~~give legal advice on the law of the ~~State~~state of Florida, the United States, or any other state, subdivision, commonwealth, or territory of the United States, or the District of Columbia (whether ~~rendered~~ incident to the preparation of a legal instrument or otherwise); or

(F)  ~~render~~provide any legal services without ~~utilizing~~executing a written ~~retainer~~ agreement with the client that ~~shall specify~~specifies ~~in bold type~~ that the foreign legal consultant is not admitted to practice law in the state of Florida nor licensed to advise on the laws of the United States or any other state, commonwealth, territory, or the District of Columbia, unless so licensed, and that the practice of the foreign legal consultant is limited to the laws of the foreign country where ~~such~~the person is admitted to practice as ~~an attorney~~a lawyer, counselor at law, or the equivalent.

**(b)  Representing Status as Member of The Florida Bar.** Foreign legal consultants certified to render services under this chapter shall not represent that they are admitted to The Florida Bar or licensed as ~~an attorney~~a lawyer or foreign legal consultant in another state, commonwealth, territory, or the District of Columbia, or as ~~an attorney~~a lawyer, counselor at law, or the equivalent in a foreign country, unless so licensed.  Persons certified under this chapter shall not use any title other than "Foreign Legal Consultant, Not Admitted to Practice Law in Florida," although such person's authorized title and firm name in the foreign country in which the person is admitted to practice as ~~an attorney~~a lawyer, counselor at law, or the equivalent may be used if the title, firm name, and the name of the foreign country are stated together with the above-mentioned designation.

Foreign legal consultants certified under this chapter must provide clients with a letter disclosing the extent of professional liability insurance coverage maintained by the foreign legal consultant, if any, as well as an affirmative statement advising the client that any client aggrieved by the foreign legal consultant will not have access to the Clients' Security Fund of The Florida Bar. The letter must further include the list of activities that the foreign legal consultant certified under this chapter is prohibited from engaging in, as set out in rule 16-1.3(a)(2)(A)-(F).

**RULE 16-1.4      ~~CERTIFICATION~~APPLICATION**

~~**(a)  Commencement of Permission to Perform Services.** Permission for a foreign legal consultant to render legal services under this chapter shall become effective upon the filing of an application and certification, with respect to an applicant, by the International Law Section of The Florida Bar, of the requirements of rules 16-1.2(a) through (j) and 16-1.3(a) and (b) herein.  In addition to any other evidence that The Florida Bar, in its discretion, may require, the application shall include the filing and approval of:~~

~~(1)  a duly authenticated certificate from the entity governing the practice of law in the foreign country in which the applicant is licensed to practice, which shall be accompanied by the official seal, if any, of such entity, and which shall certify:~~

~~(A)  the entity's jurisdiction in such matters;~~

~~(B)  the applicant's admission to practice in such foreign country and the date thereof;~~

~~(C)  the applicant's good standing as an attorney, counselor at law, or the equivalent; and~~

~~(D)  whether any charge or complaint has ever been filed against the applicant with such entity, and if so, the substance of each such charge or complaint and the adjudication or disposition thereof;~~

An applicant under this chapter must file an application with the International Law Section of The Florida Bar that must include:

- 80 -

**(a)** a certificate from the professional body or public authority having final jurisdiction over professional discipline in the foreign country in which the applicant is admitted certifying the applicant's admission to practice, the date of admission, good standing as a lawyer or counselor at law or the equivalent and a duly authenticated English translation of the certificate if it is not in English;

(2)**(b)** a letter of recommendation ~~signed by and with the official seal, if any, of~~from 1 of the members of the executive body of ~~such entity~~the professional authority or public body or from 1 of the judges of the highest court of law of ~~such~~the foreign country~~, certifying to the applicant's professional qualifications~~and an authenticated English translation of the letter if it is not in English;

~~(3) a letter of recommendation from at least 2 attorneys, counselors at law, or the equivalent admitted in and practicing in such foreign country, setting forth the length of time, when, and under what circumstances they have known the applicant and their appraisal of the applicant's moral character;~~

~~(4) a letter of recommendation from at least 2 members in good standing of The Florida Bar, setting forth the length of time, when, and under what circumstances they have known the applicant and their appraisal of the applicant's moral character;~~

(5)**(c)** a sworn statement by the applicant that the applicant:

(~~A~~1) has read and is familiar with the Rules of Professional Conduct as adopted by the Supreme Court of Florida and will abide by, and be subject to, their provisions ~~thereof~~;

(~~B~~2) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes~~, as defined in chapter 3 of these rules and rule 16-1.6. The statement by the applicant must also authorize notification to the entity governing the practice of law in the foreign country in which the applicant is licensed to practice of any disciplinary action taken against the applicant in Florida~~; and

(~~C~~3) ~~shall~~will comply with the requirements of the rule ~~16-1.3(b)~~ regarding disclosure;

(6)**(d)** a written commitment to notify ~~the court~~The Florida Bar of any resignation or revocation of the foreign legal consultant's admission to practice in the foreign country of admission, or in any other state or jurisdiction in which ~~said~~the consultant has been licensed as ~~an attorney~~a lawyer, counselor at law, or

- 81 -

equivalent or as a foreign legal consultant, or of any censure, suspension, or expulsion in respect of ~~such~~the admission; ~~and~~

~~(7)~~**(e)** a ~~duly acknowledged instrument~~notarized document setting forth the applicant's address within the state of Florida and designating the secretary of state as ~~such~~the person's agent ~~up~~on whom process may be served, ~~pursuant to applicable Florida law, with like effect~~ as if served personally ~~upon~~ ~~such~~the applicant pursuant to applicable Florida law, in any action or proceeding ~~thereafter~~ brought against the applicant arising out of or based ~~up~~on any legal services ~~rendered~~offered or provided ~~or offered to be rendered~~ by ~~such~~the applicant within or to the residents of the state of Florida, when~~ever~~ ~~after due diligence~~ service cannot be made ~~upon~~ ~~such~~the applicant at ~~such~~the address after due diligence; and

**(f)** other evidence of the nature and extent of the applicant's educational and professional qualifications, good moral character, general fitness, and compliance with the general certification regulation set forth elsewhere in this chapter.

~~**(b) Annual Sworn Statement.** A person certified under this chapter as a foreign legal consultant shall submit to The Florida Bar, on an annual basis, a sworn statement attesting to the foreign legal consultant's good standing as an attorney, counselor at law, or the equivalent in the foreign country in which such person is licensed to practice and shall also include with such statement an annual renewal fee equivalent to annual membership fees paid by members of The Florida Bar, in good standing, and such other evidence as The Florida Bar shall deem necessary to determine the continuing qualifications of the foreign legal consultant under this chapter.~~

**RULE 16-1.5      WITHDRAWAL OR TERMINATION OF
                              CERTIFICATION**

Permission to perform services under this chapter ~~shall~~ cease**s** immediately ~~up~~on the earliest of the following events:

**(a)** ~~The~~the filing of a notice by the Supreme Court of Florida, ~~in its discretion, at any time,~~ stating that permission to perform services under this chapter has been revoked~~.  A~~, a copy of ~~such notice shall~~which will be mailed by the clerk of the court to The Florida Bar and to the foreign legal consultant ~~involved.  The~~, after which the foreign legal consultant ~~shall have~~has 15 days to request reinstatement for good cause~~.~~;

**(b)** ~~The~~the foreign country in which the foreign legal consultant is admitted to practice discontinues having a professional disciplinary system for ~~attorneys~~lawyers that is generally consistent with that of The Florida Bar~~.~~; or

**(c)** ~~The~~the failure of the foreign legal consultant to comply with any applicable provisions of this chapter.

## RULE 16-1.6      DISCIPLINE

**(a) Discipline by Florida Courts.**  Each person ~~licensed~~certified to practice as a foreign legal consultant under this chapter is expressly subject to the Rules of Professional Conduct and ~~to continuing review of such consultant's qualifications to retain any license granted hereunder, and shall be subject~~ to the disciplinary jurisdiction of the Supreme Court of Florida and the other courts of this state.

**(b) Withdrawal of Certification.**  In addition to any appropriate proceedings and discipline that may be imposed by The Florida Bar or the Supreme Court of Florida under ~~chapter 3 of~~ the Rules Regulating The Florida Bar, the Supreme Court of Florida may~~, at any time, with or without cause,~~ withdraw certification ~~hereunder~~.

~~**(c) Notification of Other Jurisdictions.**  The Florida Bar shall be authorized to notify each entity governing the practice of law in the foreign country in which the foreign legal consultant is licensed to practice law of any disciplinary action taken against the foreign legal consultant.~~

## RULE 16-1.7      ANNUAL SWORN STATEMENT

A person certified under this chapter as a foreign legal consultant must submit annually to The Florida Bar in the manner required by The Florida Bar:

**(a)**  a sworn statement attesting to the foreign legal consultant's good standing as a lawyer, counselor at law, or the equivalent in the foreign country in which the person is licensed to practice; that the person intends to continue practicing as a foreign legal consultant in the state of Florida; that the person continues to meet all eligibility requirements under this chapter; that the person limits the person's practice to the activities permitted under this chapter; and that

the person currently maintains an office in the state of Florida to provide legal services as a foreign legal consultant; and

**(b)** a renewal fee equivalent to annual membership fees paid by members of The Florida Bar eligible to practice law.

## RULE 17-1.2   DEFINITIONS

**(a)   Authorized House Counsel.**  An "authorized house counsel" is any person who:

(1)  is either licensed to practice law in a United States jurisdiction other than Florida or admitted or otherwise authorized to practice as a lawyer or counselor of law or the equivalent in a foreign jurisdiction and subject to effective regulation and discipline by a duly constituted professional body or public authority or subject to recognized legal obligations pertaining to their status as lawyers;

(~~1~~2) is exclusively employed by a business organization located in ~~the state of~~ Florida and is residing in Florida or relocating to ~~the state of~~ Florida ~~in furtherance of such~~for employment within 6 months of ~~such~~the application under this chapter and receives or ~~shall~~will receive compensation for activities performed for that business organization;

(~~2~~3)  has ~~complied with rule 17-1.4~~completed an application for certification as required elsewhere in this chapter; and

(~~3~~4) has been certified as an authorized house counsel by the Supreme Court of Florida.

**(b)   Business Organization.**  A "business organization" ~~for the purpose of this rule~~ is a corporation, partnership, association or other legal entity (taken together with its respective parents, subsidiaries, and affiliates) authorized to transact business in this state that is not itself engaged in the practice of law or the rendering of legal services outside ~~such~~of the organization, whether for a fee or otherwise, and does not charge or collect a fee for the representation or advice other than to entities comprising ~~such~~that organization by the activities of the authorized house counsel.  ~~For purposes of this rule, a~~ A "business organization" does not include~~: (1)~~ a governmental entity, governmental subdivision, political

- 84 -

subdivision, or school board;(2) or any other entity that has the authority to levy a tax.

## RULE 17-1.3     ACTIVITIES

**(a) Authorized Activities.** An authorized house counsel, as an employee of a business organization, may provide legal services in the state of Florida solely to the employing business organization for which a registration is effective.  Such activities are limited to which certification is applicable but may only engage in the following activities:

(1)  the giving of legal advice to the directors, officers, employees, and agents of the business organization with respect toregarding its business and affairs;

(2)  negotiating and documenting all matters for the business organization; and

(3)  representation of the business organization in its dealings with any administrative agency or commission having jurisdiction; provided however, authorized house counsel may not make appearances as counsel in any court, administrative tribunal, agency, or commission situated in the state of Florida unless the rules governing such court or body authorize the appearance, or the attorney is specially admitted by such court or body in a case; and

(4)  providing pro bono legal services under chapter 12 of these rules if certified as an emeritus attorneylawyer.

**(b) Disclosure.** In any communication with individuals or organizations outside of the business organization, authorized house counsel must disclose that they are not licensed to practice law in the state of Florida.  If the communication is in writing, authorized house counsel must disclose in writing the name of the business organization, their title or function, and that they are not licensed to practice law in the state of Florida.  For example, the disclosure may state "J. Doe, XYZ Corporation, Authorized House Counsel, member …..(name of other state bar)….. only or not a member of The Florida Bar."  In performing activities under this subdivision, authorizedAuthorized house counsel may not represent themselves as members of The Florida Bar or licensed to practice law in this state.

**(c) Limitation on Representation.** In no event will permitted activities include the individual or personal representation of any shareholder, owner, partner, officer, employee, servant, or agent in any matter or transaction or the giving of advice unless otherwise permitted or authorized by law, code, or rule or allowed by subdivision (a) of this rule or the appearance as counsel in any court, administrative tribunal, agency or commission situated in Florida unless the rules governing the court or body authorize the appearance or the lawyer is specially admitted by the court or body in the case.

**(d) [No Change]**

## RULE 17-1.4 ~~REGISTRATION~~CERTIFICATION

**(a) Filing with The Florida Bar.** The following ~~shall~~must be filed with The Florida Bar by an individual seeking to be certified as authorized house counsel:

(1) ~~A certificate from an entity governing the practice of law in all United States jurisdictions in which the registrant is licensed to practice law certifying that the registrant is in active status and is a member in good standing; or is in inactive status. If in inactive status, the certificate must certify that the registrant is in voluntary inactive status and was not placed on inactive status involuntarily. If available, the registrant must provide a certificate of good standing in addition to the certificate regarding the registrant's inactive status.~~documentation or a certificate from all applicable United States and foreign jurisdictions proving that the registrant meets the requirements of rule 17-1.2(a)(1) and if the lawyer is in inactive status, the documentation or certification must certify that the lawyer is in voluntary inactive status and was not placed on inactive status involuntarily.

(2) a sworn statement by the registrant that the registrant:

(A) has read and is familiar with chapters 4 and 17 of the Rules Regulating The Florida Bar ~~as adopted by the Supreme Court of Florida~~ and will abide by ~~the~~its provisions ~~thereof~~;

(B) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes~~,~~ as defined in chapter 3 of the Rules Regulating The Florida Bar and this chapter~~rule 17-1.6 herein, and authorizes notification to or from the entity governing the practice of law of each state, territory, or the District~~

of Columbia in which the registrant is licensed to practice law of any disciplinary action taken against the registrant; and

(C) is not subject to a disciplinary proceeding or outstanding order of reprimand, censure, or disbarment, permanent or temporary, for professional misconduct by the bar or courts or duly constituted organization overseeing the profession or granting authority to practice law of any jurisdiction and has not been permanently denied admission to practice before the bar or duly constituted organization overseeing the profession or granting authority to practice law of any jurisdiction based upon suchthe person's character or fitness; and

(D) authorizes notification of any disciplinary or other action taken against the registrant to or from the disciplinary authority or duly constituted organization overseeing the profession or which granted authority to practice law in all United States and foreign jurisdictions where the applicant is licensed or otherwise authorized to practice law.

(3)     a certificate from a business organization certifying that: it is qualified as set forth in subdivision (b) of rule 17-1.2; it meets the definition of a business organization as defined elsewhere in this chapter, that it is aware that the registrant is not licensed to practice in Florida;, and it is not relying upon The Florida Bar in any manner in employing the authorized house counsel;

(4)     an appropriate registration application to The Florida Bar as promulgated by the executive director of The Florida Bar; and

(5)     an appropriate remittance of a filing fee prescribed and set by the executive director of The Florida Bar in an amount not to exceed the amount applicable for admission to the bar examination for an attorneya lawyer licensed in a state other than Florida.

**(b)   Review by The Florida Bar.**  Upon receipt of the items set forth in subdivision (a) of this rule, The Florida Bar shall review the itemswill review applications for compliance with this chapter.  Any application not meeting the requirements of this chapter shall be sent back to the applicant.

**(c)   Certification by Court.**  Upon review of the application by The Florida Bar, The Florida Bar shall file with the clerk of the Supreme Court of Florida the name and address of those registrants complying with the provisions of subdivision (a) of this rule along with a request that the registrant be certified as authorized house counsel.  Permission for authorized house counsel to perform services under this rule shall become effective upon approval of the request for

certification by the clerk of the Supreme Court of Florida for a person employed in Florida or, if the registrant is not yet in Florida, the effective date of employment but not later than 6 months from the filing of the items set forth above.The Florida Bar will submit the name and address of all registrants meeting the requirements of this rule to the clerk of the Supreme Court of Florida with a request that the registrant be certified as authorized house counsel.  If the registrant is employed in Florida, authorization to perform services under this rule becomes effective on the date the clerk of the Supreme Court of Florida approves the request for certification.  If the registrant is relocating to Florida, the authorization becomes effective on the date of employment in Florida, which must be within 6 months of the date of the application.

(d)  **Annual Renewal.**  The registration pursuant to this section shall be annual in a manner consistent with that applicable to an attorney licensed to practice in the state of Florida including the annual fee therefor as if such authorized house counsel was so licensed, provided, however, such renewal shall include a statement that the registrant, if on active status, is in good standing in all states or United States territories in which licensed and is not subject to any disciplinary proceedings.The certification under this chapter is annual.  The authorized house counsel must pay an annual fee that is the same fee paid by active members of The Florida Bar and provide any information the bar requires during the time set by the bar.

(e)  **Duty to Update.**  An authorized house counsel must report any change in their license status or authority to practice in another applicable United States or foreign jurisdiction within 30 days of the effective date of the change in status.  Should If an individual certified as an authorized house counsel chooses inactive status in 1 or more United States jurisdictionsany jurisdiction after certification, the authorized house counsel shallmust provide a certificatedocumentation as required by subdivision (a)(1) of this rule.  Failure to provide notice or documentation by the authorized house counsel is a basis for discipline pursuant to the Rules Regulating The Florida Bar.

## RULE 17-1.5     TERMINATION OR WITHDRAWAL OF REGISTRATIONCERTIFICATION

(a)  **Cessation of Authorization to Perform Services.**  Authorization to perform services under this rule shall ceases upon the earliest of the following events:

(1)    ~~the~~ termination or resignation of employment with the business organization ~~for which registration has been filed, provided, however, that if the authorized house counsel shall commence employment with another business organization within 30 days of the termination or resignation, authorization to perform services under this rule shall continue upon the filing with The Florida Bar of a certificate as set forth in subdivision (a)(3) of rule 17-1.4~~where the authorized house counsel was employed at the time of certification; however, if the authorized house counsel begins employment with another business organization within 30 days of the termination or resignation and that business organization provides the certificate required for certification, the authorization to perform services under this chapter will continue;

(2)    ~~the withdrawal of registration~~request by the business organization that the certification be withdrawn;

(3)    ~~the withdrawal of registration~~request by the authorized house counsel that the certification be withdrawn;

(4)    ~~the~~ relocation of an authorized house counsel outside of Florida for a period greater than 180 days;

(5)    disbarment or suspension from the practice of law, revocation of the authority to practice law, or involuntary placement on inactive status, by a court or other authorized ~~disciplinary~~ agency of another state or foreign jurisdiction by a duly constituted organization overseeing the profession or having the ability to grant the authority to practice law or by a federal court; or

(6)    the failure of authorized house counsel to comply with any ~~applicable~~ provision of this rule.

**(b)   Notice to The Florida Bar by the Authorized House Counsel.** Notice of 1 of the events set forth in ~~subdivision (a)(1)-(4) of~~ this rule or a new certificate as provided in ~~subdivision (a)(1) of~~ this rule must be filed with The Florida Bar by the authorized house counsel within 30 days after ~~such action~~the event. ~~An authorized house counsel disbarred or suspended from the practice of law, or involuntarily placed on inactive status, by a court or other authorized disciplinary agency of another state or by a federal court shall within 30 days after the effective date of disbarment, or suspension, or involuntary placement on inactive status, file with The Florida Bar a copy of the order or judgment effecting such status. Failure to provide notice by the authorized house counsel shall be a basis for discipline pursuant to the Rules Regulating The Florida Bar.~~

**(bc) ~~Notice of~~ Termination of Authorization.** ~~Upon receipt of the notice required by subdivision (a) of this rule, The Florida Bar shall forward a request to the clerk of the Supreme Court of Florida that the authorization under this chapter be terminated. Notice of the termination shall be mailed by the clerk of the Supreme Court of Florida to The Florida Bar. The Florida Bar shall mail notice of the termination~~The Florida Bar will request that the clerk of the Supreme Court of Florida terminate the authorization under this chapter after The Florida Bar has received the notice required by subsection (a) of this rule. The Florida Bar will mail notice of the termination issued by the clerk to the authorized house counsel and to the business organization employing the authorized house counsel.

**(ed) Reapplication.** ~~Nothing herein shall prevent an individual previously authorized as house counsel to reapply for authorization as set forth in rule 17-1.4.~~ An individual previously certified as an authorized house counsel may reapply for certification as long as the requirements of this chapter are met.

**(e)  Recertification.** Individuals whose authorized house counsel status was terminated for failure to pay annual fees or complete continuing legal education or basic skills course requirements may be recertified in the same manner that delinquent members of The Florida Bar are reinstated, as provided elsewhere in these rules.

## RULE 17-1.6      DISCIPLINE

**(a) Termination of Authorization by Court.** ~~In addition to any appropriate proceedings and discipline that may be imposed by The Florida Bar or the Supreme Court of Florida under chapter 3 of the Rules Regulating The Florida Bar, the~~The Supreme Court of Florida may~~, at any time, with cause,~~ temporarily or permanently terminate an authorized house counsel's ~~registration~~certification~~, temporarily or permanently~~with cause at any time, in addition to any other proceeding or discipline that may be imposed by the Supreme Court of  Florida under chapter 3 of these rules.

**(b)  Notification to Other States.** The Florida Bar ~~shall be~~is authorized to notify each entity governing the practice of law in the state, territory, or the District of Columbia in which the authorized house counsel is licensed to practice law of any disciplinary action against the authorized house counsel.

## ~~RULE 17-1.7        IMMUNITY FROM PROSECUTION~~

~~An authorized house counsel who has been duly registered under this rule shall not be subject to prosecution for the unlicensed practice of law for acting as counsel to a business organization prior to the effective date of this rule.~~

## RULE 20-1.1        PURPOSE

The purpose of this chapter is to set forth a definition that must be met in order to use the title paralegal, to establish the requirements to become a Florida Registered Paralegal, and to establish the requirements to maintain Florida Registered Paralegal status. This chapter is not intended to set forth the duties that a paralegal may perform because those restrictions are set forth in the Rules of Professional Conduct and various opinions of the Professional Ethics Committee. Nothing contained ~~herein shall be~~in this rule is deemed relevant in charging or awarding fees for legal services rendered by nonlawyers under the supervision of an ~~member of The Florida Bar~~employing or supervising lawyer, ~~such fees~~which are being based on the nature of the services rendered and not the title of the person rendering the services.

## RULE 20-2.1        GENERALLY

For purposes of this chapter, the following terms have the following meaning:

(a)    **Paralegal.**  A paralegal is a person with education, training, or work experience, who works under the direction and supervision of an ~~member of The Florida Bar~~employing or supervising lawyer and who performs specifically delegated substantive legal work for which an ~~member of The Florida Bar~~employing or supervising lawyer is responsible.

(b)    **[No Change]**

(c)    **Paralegal Work and Paralegal Work Experience.**  Paralegal work and paralegal work experience are specifically delegated substantive legal work that is performed by a person with education, training, or work experience under the direction and supervision of an ~~member of The Florida Bar for which a member of The Florida Bar~~employing or supervising lawyer for which an

employing or supervising lawyer is responsible.  In order to qualify as paralegal work or paralegal work experience for purposes of meeting the eligibility and renewal requirements, the paralegal must primarily perform paralegal work and the work must be continuous and recent.  Recent paralegal work for the purposes of meeting the eligibility and renewal requirements means work performed during the previous 5 years in connection with an initial registration, and during the preceding year in the case of a registration renewal.  Time spent performing clerical work is specifically excluded.

(d)   **[No Change]**

(e)   **Employing or Supervising Lawyer.**  An employing or supervising lawyer is ~~the lawyer~~a member of The Florida Bar, authorized house counsel, foreign legal consultant, or military lawyer, as defined by the Rules Regulating The Florida Bar, having direct supervision over the work product of the paralegal or Florida Registered Paralegal.

(f) – (j)  **[No Change]**